449 P.2d 603

**STATE of Arizona, Appellee,**

v.

**William Robert BOWEN, Appellant.**

No. 1585.

Supreme Court of Arizona.

In Banc.

Jan. 23, 1969.

Rehearing Denied March 4, 1969.

tions? (2) Was it error for the State to refuse to provide to an indigent defendant either a blood test examination of sperm taken from the alleged victim, or the funds for such a test? (3) Was it error that a witness unintentionally disclosed that the defendant refused to submit to a polygraph examination? (4) Was it error to question defendant as to prior convictions of robbery when he testified in his own behalf since he had admitted the prior convictions charged in the informations? (5) Was it error to deny defense counsel an opportunity to examine notes of the prosecuting attorney relating to a conversation with a key witness?

Darrell F. Smith, Former Atty. Gen., Gary K. Nelson, Atty. Gen., by James S. Tegart, Asst. Atty. Gen., Phoenix, for appellee.

Dushoff, Sacks & Corcoran by Robert J. Corcoran, Phoenix, for appellant.

KRUCKER, Judge, Court of Appeals.

The defendant was charged with the crimes of rape and robbery upon informations filed in the Superior Court of Maricopa County on August 11, 1964, and alleging prior felony convictions. He was arraigned on August 17, 1964, entered a plea of not guilty, admitted the prior convictions, and did not waive the right to be tried within 60 days. Trial was set for October 1, 1964, with actual trial commencing October 14, 1964.

Both charges were consolidated for trial and the jury returned verdicts of guilty as to both. Defendant was sentenced to serve not less than 20 years nor more than 25 years in the Arizona State Prison for each offense, the sentences to run concurrently.[1]

Defendant raises the following questions for review (we will discuss the facts as they relate to the specific question): (1) Was it error to commence defendant's trial 64 days after the filing of the informa-

## DELAY OF TRIAL

The constitutional guarantee of a speedy trial, Arizona Constitution, Art. 2 § 24, A.R.S., is implemented by Rule 236, Rules of Criminal Procedure, 17 A.R.S., which provides for dismissal if trial is not had within 60 days after the information is filed.

The original trial date was October 1, within the 60-day period. Defendant filed a motion challenging the qualifications of the jury panel on September 25, 1964. The motion was granted on October 6, resulting in a new jury panel being drawn and qualified.

Where a delay is beyond the 60-day period and is caused by defendant, dismissal is not required. As stated in State v. Pruett, 101 Ariz. 65, 415 P.2d 888 (1966):

> "An alleged denial of a speedy trial must be considered in light of the fact [sic] and circumstances of each case, Everett v. State, 88 Ariz. 293, 356 P.2d 394, and determined from a common sense viewpoint. * * *" 101 Ariz., at 68, 415 P.2d, at 891.

See also, State v. Womack, 6 Ariz.App. 267, 431 P.2d 908 (1967). In State v. Churchill, 82 Ariz. 375, 313 P.2d 753 (1957), this Court held that before a defendant is entitled to an order of dismissal under Rule

---

1. A.R.S. §§ 13–1649 and 13–1650 prescribe a sentence of not less than ten years, as here applied.

236, Rules of Criminal Procedure, he must place himself under the spirit and intention of the Rule.

We held in Rojas v. Superior Court, 100 Ariz. 364, 414 P.2d 740 (1966), that Rule 236 does not apply where the delay was occasioned by the defendant, i. e., his challenge of the jury panel by motion filed just five days before the date set for trial.

## BLOOD TEST EXAMINATION

■ In considering the question of whether an indigent defendant is entitled to State-furnished funds for expert testimony, tests, and other "paraphernalia of defense," we appreciate that this is an ever-growing problem.

A sample of sperm, taken from the victim, was available at all times for testing. A test of this sperm and a subsequent test of the saliva and blood of the accused can be made, which, although unavailable as positive identification, may exclude the accused. Defendant made a pre-trial motion entitled "Motion for Appointment of Experts" so that an examination could be made, which was denied. He also made a motion at trial to dismiss and quash information because of the prejudice to him from not affording this expert testimony. This motion was also denied. Defendant now claims that the failure to give the test or provide funds for obtaining it was a denial of due process and equal protection of the law.

We note that the defendant at no time stipulated or agreed that the test results would be admissible or binding upon him if they indicated that the defendant fell within the class or the result would not be exclusionary.

It is ably argued that indigent defendants should be afforded expert testimony at State expense. People v. Watson, 36 Ill. 2d 228, 221 N.E.2d 645 (1966) (handwriting expert in a forgery case); Ambassador Goldberg, Equality and Governmental Action, James Madison Lecture, copyrighted by New York University School of Law, p. 18 (February 11, 1964); Report of Attorney General's Committee on Poverty and the Administration of Criminal Justice, p. 12 (1963).

This Court has never held that an indigent is entitled to experts at State expense, and no Arizona authority is cited to this effect. In State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960), it was held that an indigent defendant who had entered a plea of not guilty by reason of insanity was not entitled to have medical experts appointed at State expense to assist him in his defense.

More recently, the Court of Appeals of this State, Division One, held that A.R.S. § 13–1621.01 requires the court to appoint a psychiatrist prior to the trial, San Miguel v. McCarthy, 8 Ariz.App. 323, 446 P.2d 22 (1968). This holding was the result of an express provision of a statutory enactment by the legislature in 1968. In State v. Superior Court In and For Pima County, 2 Ariz.App. 458, 409 P.2d 742 (1966), (review denied, March 1, 1966), it was held that the rights of an indigent defendant to equal protection of the law and due process of law imposed no duty on the county to pay for the services of a medical doctor who examined the defendant and testified at his trial as an expert concerning chronic alcoholism; and in State v. Superior Court In and For Pima County, 2 Ariz.App. 466, 409 P.2d 750 (1966), (review denied, February 23, 1966), it was held that the superior court had no inherent power to pay expenses incurred in defense of an indigent defendant.

■ Until the power of the courts to order payment of defense experts is authorized by appropriate legislation, we cannot judicially legislate to enlarge the scope of the term "counsel" to encompass expert testimony.

## REFERENCE TO POLYGRAPH

During the course of questioning one of the State's witnesses, a Detective Moughler, as to why he did not take a sample of the defendant's blood for testing, the following ensued:

* * * * * *

"THE COURT: All right.

(Case resumed before the jury).

THE COURT: Do you recall the last question?

THE WITNESS: A Repeat it please.

RECROSS EXAMINATION (CONTINUED) BY MR. ELDRIDGE:

Q. I will repeat it for you. Officer, would you tell the jury why you didn't take any blood from the defendant at that time?

A. I couldn't force him to give me blood for one thing, and I had asked him if he would care to take a polygraph examination, which he refused.

MR. CORCORAN: May we approach the bench?

(Whereupon Court and counsel confer at the bench outside the hearing of the jury as follows:)

MR. CORCORAN: I object to the statement made by the officer. It is highly prejudicial. The defendant does not have to take the polygraph test. Even if he did take it, the results might therefor not be admissible as evidence, and I move the Court for a mistrial. It is grossly prejudicial to mention polygraph. It is not good evidence, and he states the defendant denied taking one.

MR. ELDRIDGE: He opened the door to this line of questioning. The answer of the witness was a little bit unresponsive. I didn't ask him about the polygraph test. Mr. Corcoran has so thoroughly gone into and over this area as to leave nothing else for the jury to believe. They have Marcia King's story, that is all they wanted. They don't ask him anything else. He opened the door as to all the conversations they had with him at that time.

THE COURT: We will deny the motion for a mistrial.

MR. CORCORAN: May I ask the Court to take that motion under advisement rather than deny it at this time?

THE COURT: You may renew it at a later time. The Court will instruct the jury to disregard the last answer in its entirety and be stricken. I do think it will probably go to why didn't he go beyond it. I will not let it in for the reasons you say.

\* \* \* \* \* \*

"THE COURT: Ladies and gentlemen of the jury, *as to the last question, disregard it. The Court had it stricken from the record. \* \* \**" (Emphasis supplied)

 There is no question but that evidence of, or reference to, a polygraph test is inadmissible for any reason. All authorities are in accord. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed 2d 908 (1966); State v. McGee, 91 Ariz. 101, 370 P.2d 261 (1962). However, under certain circumstances where an answer is in part unresponsive and there is no indication or claim that the prosecution knew, expected, or solicited the unresponsive answer, there is no error. People v. Kemp, 55 Cal.2d 458, 11 Cal.Rptr. 361, 359 P.2d 913 (1961), cert. denied, 368 U.S. 932, 82 S.Ct. 359, 7 L.Ed.2d 194 (1961). The court properly instructed the jury to disregard the answer and strike it from the record. We hold that this fully protected the defendant and that if there was error, it was not prejudicial.

## CROSS EXAMINATION ON PRIOR CONVICTIONS

█ The defendant took the stand to testify in his own behalf. He thus exposed his credibility to attack by cross examination as to prior felony convictions. Udall, Arizona Law of Evidence § 67. As stated in State v. Polan, 78 Ariz. 253, 278 P.2d 432 (1954):

"\* \* \* When a defendant has convictions for felonies in his background and takes the stand, he does so at the risk of having his prior record of such convictions laid before the jury. \* \* \*" 78 Ariz., at 260, 278 P.2d at 437.

█ By admitting the allegations of prior convictions, the defendant cannot foreclose exposition of his past for im-

peachment purposes. Cf., Hadley v. State, 25 Ariz. 23, 212 P. 458 (1923).

### PRODUCTION OF PROSECUTOR'S NOTES

Defendant claims that it was error to refuse the production of the prosecutor's notes of a purported conversation with a State's witness concerning the witness's conversations with the defendant about the victim the evening before the alleged crimes. There is some claim that there was a discrepancy between the witness's testimony as to this conversation at the trial and the testimony given by the witness at the preliminary hearing. Defense counsel moved. to produce the prosecuting attorney's notes of the conversation with the witness, Mr. Patmore. The motion was denied, and the defendant contends the denial was violative of due process.

 It is true that, when a prosecution witness testifies, a defendant is entitled to examine notes or reports made by him on which his trial testimony is based, State v. Ashton, 95 Ariz. 37, 386 P.2d 83 (1963), and that concealment of facts violates due process requirements. State v. Fowler, 101 Ariz. 561, 422 P.2d 125 (1967), (existence of a knife found near the scene). In the case before us, the requested notes were not made by the witness, but rather were the work product of the prosecuting attorney. Under Criminal Rule 195, 17 A.R.S., defendant has a right to inspect certain documents, papers, and tangible objects upon a showing that they will be material to the preparation of the defense. The prosecutor's notes, however, are within "the work-product doctrine" and the defendant was not entitled to examine them. State v. McGee, supra; State ex rel. Corbin v. Superior Court In and For Maricopa County, 99 Ariz. 382, 409 P.2d 547 (1966).

Defense counsel was present at the preliminary hearing and the transcript of testimony presented, including that of the witness in question, would certainly supply an adequate basis for cross-examination and impeachment of the witness at trial. The defendant has demonstrated no "unusual circumstances" to have required the trial court to exercise its discretion to further the "due administration of justice." State v. McGee, supra.

For the foregoing reasons, the judgments of conviction are affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and W. McFARLAND, JJ., concur.