646 P.2d 429

STATE of Idaho, Plaintiff-Respondent,

v.

Doyne Jackson BOOTHE, Defendant-Appellant.

No. 13522.

Court of Appeals of Idaho.

March 30, 1982.

Petition for Review Denied June 18, 1982.

Thomas J. McCabe and Wilbur T. Nelson, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A. I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Doyne Jackson Boothe appeals his judgment of conviction for the offense of lewd conduct with a minor child in violation of I.C. § 18–6607. He assigns as error: (1) admission of testimony concerning lewd acts and sexual misconduct with the victim and her older sister, other than that with which he was charged; (2) insufficiency of corroboration of the victim's testimony; (3) submission of the question of sufficiency of corroborative evidence to the jury; (4) failure to give a requested instruction to the jury concerning corroboration of the prior sexual misconduct with the victim's sister; (5) admission of allegedly prejudicial testimony by a witness mentioning polygraph tests; and (6) admission of allegedly inculpatory statements made by Boothe to one of the state's witnesses. We *affirm* the judgment of conviction.

The victim, Boothe's stepdaughter, was twelve years of age at the time of the incident. The alleged incident occurred in the family home, while Boothe and the victim were watching television. According to the testimony of the victim, Boothe sat her on his lap, began kissing her, and fondling her breasts and genital area. The victim's mother, Boothe's wife, was outside working in the yard. The victim managed to free herself and went to her bedroom. There she stayed until later in the evening when she was able to find a time when her mother was alone. In an emotionally disturbed state, she then told her mother of the incident. The next day the mother and daughter moved from the home to a motel and subsequently the victim was sent to another state to reside with relatives. Boothe and his wife were later divorced.

Approximately two and a half years after the incident, charges of lewd and lascivious conduct with a minor were filed. The de-termination to file the charges was made after Mrs. Boothe learned that there had been other incidents of similar misconduct between Boothe and another stepdaughter. Before these charges were filed, Mrs. Boothe notified Boothe's employer of her allegations. After speaking with the victim and Mrs. Boothe, Boothe's supervisor terminated the employment.

At trial, the victim testified concerning a similar incident that took place while the family was on an overnight camping trip two days prior to the incident in question. The other stepdaughter, the victim's older sister, also testified as to similar sexual misconduct between Boothe and her. The incidents with the older sister occurred over a five-year period prior to the occasions with the victim. The court admitted the testimony of all these prior incidents, stating that it was probative of Boothe's motive, intent and inclination, and that the court would give an instruction to the jury regarding corroboration.

Also elicited at trial was testimony from Boothe's superior officer regarding statements made by Boothe at the time he was notified of his job termination. The supervisor testified:

> The next statement was in the area that "You'll have a hard time proving this. There was no sexual intent." Basically, "You need intent to prove it. I patted her on the"—I believe he used the term ass—"and then told her to go tell her mother so I could get out of this marriage."

The first issue we address is Boothe's assertion of error in the admission of the evidence regarding the similar prior incidents with the victim and with the victim's sister. As a general rule, evidence that a defendant has committed other crimes is inadmissible to show criminal propensity on the part of the accused. *See State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979). However, evidence of other crimes is admissible when relevant to prove: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan em-

bracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of the crime on trial, and (6) other similar issues. *State v. Wrenn*, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978).

■ As another exception to the rule against admitting evidence of prior criminal activity, Idaho allows the admission of similar acts of sexual misconduct between a defendant and the victim or between the defendant and another witness, for corroboration of the victim's testimony in sex crime cases. *State v. Elsen*, 68 Idaho 50, 187 P.2d 976 (1947); *State v. Hirsch*, 64 Idaho 20, 127 P.2d 764 (1942) (also admitted to show the relation and familiarity of the parties); *State v. Shelton*, 46 Idaho 423, 267 P. 950 (1928) (admitted to show intimacy and "adulterous inclination" of defendant). In *State v. Hammock*, 18 Idaho 424, 110 P. 169 (1910), the defendant was convicted of the crime of statutory rape. The admission of evidence showing the commission of other like crimes by the defendant upon other persons was upheld. The evidence developed while the state was proving statements and declarations made by the defendant's wife. The court said that the evidence was admissible,

> "[w]ith reference to this specific crime, and the conduct and habit of the defendant in the accomplishment of the general purpose of gratifying his lust on this and other girls .... Any evidence of other crimes which developed was so intimately and inseparably connected with the circumstances of this specific offense as to render it admissible as a part of the common criminal design, all of which was necessarily admissible in order to get a clear understanding of the situation of the parties and the probable truth or falsity of this charge." *Id.*, at 429, 110 P. at 170.

In *State v. Dowell*, 47 Idaho 457, 276 P. 39 (1929), evidence was allowed in a statutory rape case that the defendant had intercourse with another young girl in the presence of the victim, to show the defendant's

conduct, purpose and disposition toward the victim. In *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982), this court recently upheld the admission of evidence of almost identical acts by the defendant Greensweig with a young girl other than the prosecutrix as probative of Greensweig's intent.

Conversely, it has been held that proof of a prior attempt to commit another sexual crime upon another female does not show any design or intent to perpetrate a rape three years later upon a present complainant. *State v. Larsen*, 42 Idaho 517, 246 P. 313 (1926). In *State v. Garney*, 45 Idaho 768, 265 P. 668 (1928), evidence of prior improprieties with another person was held inadmissible. There the court said:

> "[I]t was in no way linked together with the offense for which appellant was on trial. There must be a causal relation or logical and natural connection between the two acts, or they must form parts of but one transaction. The general rule is, that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon trial, must be excluded." *Id.* at 775, 265 P. at 670.

■ These cases lead us to the conclusion that if testimony of prior acts is to be admissible in sex crime cases, the prior acts must not be too remote in time and there must be some logical connection between the fact sought to be proved and the evidence of prior sexual misconduct. In this case, the prior misconduct with the victim occurred only a few days earlier and was thus not too remote. Further, it was probative of Boothe's intent to use the victim to gratify his sexual desires. The testimony was admissible, although standing alone it could not be considered sufficient corroboration to sustain a conviction. *See State v. Elsen*, 68 Idaho at 56, 187 P.2d at 979.

■ The prior misconduct with the victim's sister transpired over a five year peri-

od ending approximately one year prior to the incident for which Boothe was prosecuted. It began shortly after Boothe's marriage to the girls' mother, and it terminated upon the older girl's marriage and departure from the Boothe home. We feel under the circumstances that it was not too remote to be considered. Sufficient logical connection also exists to allow its admission for corroborative purposes. It was probative of defendant's intent, or general plan to use his stepdaughters to gratify his sexual desires. I.C. § 18–6607. *See State v. Maestas*, 224 N.W.2d 248, (Iowa 1979); *Staggers v. State*, 120 Ga.App. 875, 172 S.E.2d 462 (1969). There was no error in the admission of either testimony.

▆ Boothe also contends the trial court erred in denying his motions for directed verdict of acquittal based upon insufficiency of corroborative evidence. The trial in this case occurred in September, 1979, and therefore the rule requiring corroboration of the victim's testimony was in effect. *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982); *State v. Byers*, 102 Idaho 159, 627 P.2d 788 (1981). A motion for directed verdict of acquittal must be granted only when there is no evidence upon which to base a verdict of guilty. *State v. O'Bryan*, 96 Idaho 548, 556, 531 P.2d 1193, 1201 (1975). Here there was evidence which tended to support the victim's testimony and therefore corroborate her allegation that the accused perpetrated the alleged act. The prosecutrix testified as to the incident of a few days prior, the older sister testified as to the similar sexual misconduct between Boothe and herself, and the victim's mother testified of the hysterical condition of her daughter and the general demeanor of Boothe on the night the alleged misconduct occurred. Mrs. Boothe testified that she confronted Boothe immediately after the victim told her of the occurrence. He remarked to her "Well I see she's told you . . . . Go ahead and—and tell the police if you want, but its—its your word against mine. . . . Me being a police officer, they wouldn't—they wouldn't believe you. . . ." Finally, there was the testimony of Boothe's supervisor, quoted above, concerning relevant statements made by Boothe to him.

When corroborative facts are examined individually, each fact standing alone may be insufficient to furnish the necessary corroborative proof, but taken and considered as a whole they may be adequate. *State v. Tope*, 86 Idaho 462, 387 P.2d 888 (1963). Because there is no hard and fast rule laid down on the subject of corroboration, each case must depend upon its own merits and surrounding circumstances. *Id.*

Whether there is sufficient corroboration is, in the first instance, a question for the jury; and unless we can say, as a matter of law, that such evidence is insufficient, we will not reverse upon that ground. *State v. Adair*, 99 Idaho 703, 707, 587 P.2d 1238, 1243 (1978). We have reviewed the transcript of the trial and conclude that the trial court was correct in denying Boothe's motion in light of the corroborative evidence in the record. The court was also correct in giving the question of sufficiency of the corroborative evidence to the jury. *State v. Adair, supra* ; 24A C.J.S. *Criminal Law* § 1884(1) at 848–849 (1962).

▆ Boothe also disputes the trial court's refusal to give one of his requested instructions to the jury. In effect, this instruction cautioned the jury that, without corroboration, the testimony of the older sister regarding the sexual misconduct between Boothe and her should not be used in its deliberations. We are not persuaded by the argument that corroborating evidence must itself be corroborated. The reliability of a witness who testifies as to sexual misconduct between a defendant and the witness can be determined by a jury just as the testimony of other witnesses is determined. *State v. Adair, supra.* The jury should hear such testimony and, in light of cross-examination, denials or rebuttals, assign the proper weight to this evidence in their deliberations. 24A C.J.S. *Criminal Law* § 1884(1) at 848–849 (1962). We hold that the trial court correctly refused to give the requested instruction to the jury. I.C. § 19–2132.

During the defense counsel's cross-examination of the victim's mother, she was asked how often she had had contacts with law enforcement officers. In answering the question, she volunteered that "they wanted to run polygraphs on us." Defense counsel immediately objected to any further statements concerning polygraph tests. The objection was sustained, and the trial court instructed the jury to disregard the answer. Out of the presence of the jury, defense counsel then moved for a mistrial. The motion was denied. Boothe now urges that the mention of "polygraphs" was prejudicial error requiring reversal of the denial of the motion for mistrial.

The question of the admissibility of polygraph tests in evidence has not been previously addressed by a reported Idaho decision and it is not necessary that we do so here. We limit our concern solely to the issue of whether the mention of the word "polygraphs" during trial created such prejudice that a mistrial should have been declared by the trial court. Beyond the voluntary response of Mrs. Boothe, there was no other reference made before the jury to polygraph tests. It is undisclosed whether the tests were actually conducted and, if so, what the results were.

A similar situation was presented to the Arizona Supreme Court in the case of *State v. Bowen*, 104 Ariz. 138, 449 P.2d 603 (1969). There a state's witness was asked by the prosecution why a blood sample for testing was not taken from the defendant in a rape case. The witness, a detective, replied: "I couldn't force him to give me blood for one thing, and I had asked him if he would care to take a polygraph examination, which he refused." Bowen's counsel immediately requested a hearing without the presence of the jury. After the jury was excused, he formally objected to the reference to the polygraph test and moved for a mistrial. The trial court denied the motion. When the jury returned to the courtroom, the judge instructed the jury to disregard the witness's entire answer, striking it from the record. On appeal the Arizona court stated:

"There is no question but that evidence of, or reference to, a polygraph test is inadmissible for any reason. All authorities are in accord. [Citations omitted.] However, under certain circumstances where an answer is in part unresponsive and there is no indication or claim that the prosecution knew, expected, or solicited the unresponsive answer, there is no error. [Citations omitted.] The court properly instructed the jury to disregard the answer and strike it from the record. We hold that this fully protected the defendant and that if there was error, it was not prejudicial." *Id.* at 606.

Comparably, in the Florida case of *Johnson v. State*, 166 So.2d 798 (Fla.App.1964) the court concluded:

"[W]hile neither the results of a lie detector examination nor testimony which indirectly or inferentially apprises a jury of the results of a lie detector examination is admissible in evidence, the mere fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as to the result is raised or *if* any inference that might be raised as to the results are not prejudicial." [Emphasis in original.] *Id.* at 805.

Here the absence of other evidence concerning the results of polygraph tests renders questionable any prejudice created by unresponsive, unsolicited reference to polygraphs. Like Arizona, Idaho adheres to the rule that an error in the admission of evidence may be cured by proper instruction, and it must be presumed that the jury obeyed the trial court's direction to disregard entirely the objectional testimony. *State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968). The rule in *Rolfe* has not been applied in any reported Idaho decisions addressing the inadvertent or unresponsive reference to polygraph tests, as in *Bowen*. We hold that the result in *Bowen* should pertain in the circumstances of the instant matter, and find that no prejudicial error occurred.

Finally, Boothe contends the court erred in admitting the statements made to his employer when notified of his job termi-

nation, quoted above. Apparently, Boothe would have us find error due to the "inflammatory" nature of these statements. We have reviewed the record of the suppression hearing and the testimony as it was presented at trial, and find that it was not "inflammatory". The testimony may have been prejudicial, but the prejudice resulted from its probative effect. The admission of this testimony was not error. Accordingly, the judgment of conviction is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, concurring specially:

Our decision conforms to a long line of authority in Idaho, holding that in a sex offense prosecution, evidence of other sexual misconduct with the victim or with third persons may be admissible for the purpose of corroboration. As illustrated by the cases we cite, such evidence may also tend to prove other allegations, such as intent or a common scheme. But the evidence can be highly prejudicial. A trial court must weigh, in each case, the probative value of the evidence against its likely prejudicial impact.

This balancing decision may be profoundly affected, in the future, by our Supreme Court's decision in *State v. Byers*, 102 Idaho 159, 627 P.2d 788 (1981). In *Byers* the court abolished the absolute requirement of corroboration in sex offense cases. Demise of the corroboration requirement is widely expected to encourage legitimate prosecutions. *Byers*, 102 Idaho at 162, 627 P.2d at 791. However, a more subtle effect may be to focus critical attention on the probative value of evidence of other sexual misconduct. The prosecution may no longer justify introduction of such evidence on the ground that it is relevant to a required showing of corroboration.

Idaho trial courts now should take a fresh look at the balance between probative value and prejudicial impact. We have noted in our decision that evidence of other crimes generally is not admissible to prove the offense charged. A person who committed other crimes might have been more likely to commit the crime in question; but the probative value of such evidence usually is outweighed by the unfair prejudice to the defendant. We have outlined the principal exceptions to this general rule. These exceptions are grounded in specific elements of proof of the crime charged. Evidence admissible under the exceptions must serve a genuine purpose other than suggesting that the defendant probably committed the crime charged because he committed other crimes. *See* McCormick on Evidence (2d Ed. 1972), § 190, at 447.

Sex offense cases, particularly those involving children, are emotionally explosive. The potential for runaway prejudice is great. However, these cases often are shrouded by layers of complex human relationships and behavior patterns that must be fully understood in order to establish the elements of the crimes charged.

In such circumstances, it will be especially crucial to identify the true purpose for which evidence of other sexual misconduct is offered. Purposes such as showing intent or proving a common scheme can no longer "tag along" with corroboration. They should be examined on their own merits and weighed directly against the prejudicial impact. In the post-*Byers* era, there will be no easy answers.