NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAUL A CARRILLO, *Appellant.*

No. 1 CA-CR 14-0381
FILED 2-4-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-135181-003
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christopher M. DeRose
*Counsel for Appellee*

Law Office of Ray A. Ybarra Maldonado, PLC, Phoenix
By Ray Ybarra Maldonado
*Counsel for Appellant*

--------------------------------

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

--------------------------------

**W I N T R O P**, Judge:

**¶1**        Raul A. Carrillo ("Appellant") appeals his convictions and sentences for attempted armed robbery, aggravated assault, and conspiracy to commit armed robbery.  He argues the trial court erred in denying his motion to suppress and motion for mistrial.  Appellant also contends the State violated its obligation to disclose evidence.  Finding no error, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        On July 2, 2012, Appellant, Ivan Barragan, Ana Cadena, and Omar Reyes observed the victim delivering "spice" to a smoke shop before following him by car to his next stop where Cadena parked.  Appellant and Barragan, both armed, exited the vehicle.  Barragan pointed his handgun at the victim and demanded money.  According to Cadena, "the plan" had been to scare the victim; instead, after the victim grabbed the gun from Barragan, Appellant fired his gun twice, wounding both Barragan and the victim.

**¶3**        Police investigated the incident and arrested Appellant the following day.  During his interview with Detective Roestenberg, Appellant, who was sixteen years old at the time, was given his juvenile *Miranda*[2] warnings and initially denied any involvement in the incident.  Appellant eventually admitted that he and the others followed the victim, and although he continued to deny being the shooter, Appellant confessed

--------------------------------

[1]      We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

[2]      *See Miranda v. Arizona*, 384 U.S. 436, 471–72 (1966).

to being armed when he and Barragan got out of the car and when Barragan demanded money from the victim.

¶4        The grand jury indicted Barragan, Cadena, and Appellant on one count of attempted armed robbery, a dangerous[3] class 3 felony ("Count 1"); one count of aggravated assault, also a dangerous class 3 felony ("Count 2"); and one count of conspiracy to commit armed robbery, a class 2 felony ("Count 3"). Barragan entered a plea agreement with the State, and Appellant and Cadena were tried together. Before trial, Appellant moved to suppress the statements he made during his interview with Detective Roestenberg, arguing the statements were made involuntarily and in violation of *Miranda* because his request for his mother to be present during the interview went unheeded. The trial court held an evidentiary hearing on the motion and subsequently denied it.

¶5        The jury found Appellant guilty as charged,[4] and the court imposed concurrent prison terms of 14 years each for Counts 1 and 2, and 12.5 years for Count 3. Appellant appealed,[5] and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A).[6]

---

[3]        The indictment alleged the three defendants committed the assault either as a principal or as accomplices by using a gun to place the victim in reasonable apprehension of imminent physical injury. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-1203(A)(2), -1204(A)(2).

[4]        Cadena was also found guilty of the charged offenses. We affirmed her convictions and sentences in *State v. Cadena*, No. 1 CA-CR 14-0363, 2015 WL 4538525, at *3 (Ariz. App. July 28, 2015) (mem. decision).

[5]        Appellant's initial notice of appeal was untimely. We suspended the appeal to allow Appellant to file a petition for post-conviction relief seeking authorization to file a delayed appeal. Appellant filed such a petition and the trial court authorized Appellant to file a delayed notice of appeal; jurisdiction was then revested in this court.

[6]        We cite the current version of the applicable statutes unless changes material to our decision have occurred since the date of the offense.

**ANALYSIS**

*I.     Motion to Suppress*

**¶6**     Appellant argues the court erred in denying his motion to suppress because his confession to Detective Roestenberg was made in violation of *Miranda* and was otherwise involuntary due to his mother's absence during the interview.   Appellant specifically contends that Roestenberg did not honor Appellant's request that his mother be present during the interview, thus rendering his *Miranda* waiver involuntary. Similarly, Appellant argues his confession was involuntary because, unknown to him, his mother was at the police station while he was interrogated, but she was not permitted to attend the questioning.

**¶7**     We review a trial court's ruling on a motion to suppress a defendant's confession for an abuse of discretion.  *State v. Newell*, 212 Ariz. 389, 396, 396 n. 6, ¶ 22, 132 P.3d 833, 840, 840 n. 6 (2006).  In conducting such a review, we consider only the evidence presented at the suppression hearing, and we view that evidence in a light most favorable to upholding the court's ruling.  *Id.*; *State v. Hyde*, 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996).  We defer to the trial court's determinations of an interrogator's credibility and the reasonableness of the interrogator's inferences.  *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996).  But we review the trial court's ultimate legal conclusion *de novo.  Id.*

**¶8**     *Miranda* requires the police to warn suspects who are in custody of their rights before initiating questioning.  *State v. Spears*, 184 Ariz. 277, 286, 908 P.2d 1062, 1071 (1996) (citing *Miranda*, 384 U.S. at 444). Specifically, a person who is in custody and subjected to interrogation must be advised that he has the right to remain silent; that anything he says can be held against him; that he has the right to the presence of an attorney; and that, if he cannot afford an attorney, one will be appointed for him prior to any questioning.  *Miranda*, 384 U.S. at 479.  After these warnings have been given, the individual may waive these rights, and answer questions or agree to make a statement, "provided the waiver is made voluntarily, knowingly, and intelligently."  *Id.* at 444; *accord State v. Jimenez*, 165 Ariz. 444, 449, 799 P.2d 785, 790 (1990).

**¶9**     A confession must be voluntary to be admissible.  *In re Andre M.*, 207 Ariz. 482, 484, ¶ 6, 88 P.3d 552, 554 (2004).  Because a defendant's confession is presumptively involuntary, the State has the burden of proving by a preponderance of the evidence that the confession was

voluntary and not the product of coercion. *State v. Ross*, 180 Ariz. 598, 603, 886 P.2d 1354, 1359 (1994); *State v. Amaya-Ruiz*, 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990). "In making this determination, the totality of the circumstances surrounding the confession must be considered." *Amaya-Ruiz*, 166 Ariz. at 164, 800 P.2d at 1272. "If the arrestee is a juvenile, the youth's age and a parent's presence are relevant, though not necessarily determinative, factors that courts should consider in assessing whether consent was voluntary under the totality of the circumstances." *State v. Butler*, 232 Ariz. 84, 88, ¶ 18, 302 P.3d 609, 613 (2013).

**¶10** Here, the record supports a conclusion that Appellant's confession was made in accordance with *Miranda*. After reading the juvenile *Miranda* warnings to Appellant, Roestenberg asked Appellant whether he understood each right, and Appellant unequivocally indicated that he did.[7] Appellant also indicated that he wanted to talk with Roestenberg, and before questioning commenced, the following transpired:

> Roestenberg: Do you want [to] have your parents? You don't want your mom here, do you? Do you want your parents or guardian . . .
>
> Appellant: I want her to be here, but . . .
>
> Roestenberg: Oh, you do?
>
> Appellant: . . . we can talk, you know, I want to talk about this 'cuz I don't know what . . . is going on.
>
> Roestenberg: I know. But do you want your mom here right now or do you want to talk to me?
>
> Appellant: We can talk, you know.
>
> Roestenberg: OK.

**¶11** Roestenberg testified at the suppression hearing that he asked the second time whether Appellant wanted his mother at the interview in order to clarify Appellant's initial response because he (Roestenberg) was

---

[7] Appellant also told Roestenberg that he thought the warnings were the same he had heard when he was arrested previously for an unrelated criminal offense.

surprised that Appellant wanted his mother present.[8]  Indeed, the colloquy between Roestenberg and Appellant indicates that, although Appellant initially indicated that he "wanted" his mother to be present, his overriding, stated desire was to speak with Roestenberg.  And Appellant clearly expressed and reaffirmed his desire to talk after Roestenberg requested clarification.  Based on this record, we conclude Appellant voluntarily waived his *Miranda* rights and proceeded with the interview despite his mother's absence.

¶12          The record also establishes the State met its burden of proof to rebut the presumption that Appellant's confession was involuntary.  Appellant presented no evidence that Roestenberg or any other police officer coerced him into making inculpatory statements; indeed, Roestenberg testified he "[a]bsolutely [did] not" threaten Appellant in any way.  *See State v. Jerousek*, 121 Ariz. 420, 424, 590 P.2d 1366, 1370 (1979) (stating "[a] prima facie case for admission of a confession is made when the officer testifies that the confession was obtained without threat, coercion or promises of immunity or a lesser penalty").  Appellant also did not claim that Roestenberg made any promises to extract a confession.

¶13          Finally, we reject Appellant's assertion that his mother's unsuccessful requests at the police station to see Appellant when he was being questioned rendered his confession involuntary.  In support of his argument, Appellant relies on *Andre M.*, 207 Ariz. 482, 88 P.3d 552.  In that case, Andre, a high school student involved in a fight, was interviewed by police in the principal's office.  *Id.* at 483, ¶ 2, 88 P.3d at 553.  Andre's mother arrived at the school after the initial interview ended, and she and Andre waited together to resume the questioning.  *Id.*  Meanwhile, police discovered on school grounds a sawed-off shotgun that was connected to Andre.  *Id.*  The mother, without knowing about the discovery of the gun, left the school before questioning resumed, but she informed the assistant principal that, when she returned, she wished she or an administrator be present when police interviewed Andre.  *Id.* at 483–84, ¶¶ 2–3, 88 P.3d at 553–54.  Andre's mother returned to the school after the police interview resumed, and she attempted to enter the room where the interview was occurring.  *Id.* at 484, ¶ 4, 88 P.3d at 554.  However, a police officer denied her access.  *Id.*  Andre thereafter admitted to possessing the shotgun, and he later moved to suppress his confession.  *Id.* at ¶ 5.  The juvenile court denied the motion and ultimately adjudicated Andre delinquent.  *Id.*

---

[8]      Thereafter, Appellant never requested that his mother be present for the interview.

**¶14**        Our Supreme Court reversed and held the State failed to rebut the presumption of involuntariness. *Id.* at 486–87, ¶¶ 19, 21, 88 P.3d at 556–57. In support of its holding, the court noted that "the record reveals no justification for excluding Andre's mother" and the juvenile court should have placed significant weight to such exclusion without justification. *Id.* at 485–86, ¶¶ 12, 15, 88 P.3d at 555–56. The court also referred to the absence of the juvenile's recorded interview in the record and the lack of any indication that the juvenile was informed of his age-appropriate *Miranda* rights, evidence the court noted is "typically offered by the state to bolster its showing of voluntariness." *Id.* at ¶ 18.

**¶15**        Here, in contrast to *Andre M.*, the record establishes that Appellant voluntarily waived his right to have his mother present during his interview, and the recorded interview otherwise establishes that his confession was not coerced. Because Appellant waived his mother's presence, her subsequent preclusion from the interview was justified. As Detective Roestenberg testified at the suppression hearing—although he did not remember Appellant's mother being at the police station—he typically does not stop questioning to allow a parent's presence at an interview "unless it's initiated . . . by the suspect." Based on this justification regarding Appellant's mother's absence from the interview, *Andre M.* does not require reversal here.[9]

**¶16**        For these reasons, we conclude that no *Miranda* violation occurred and that the State satisfied its burden to establish the voluntariness of Appellant's confession. Consequently, the trial court did not err in denying Appellant's motion to suppress.

---

[9]        Further distinguishing *Andre M.*, Appellant's confession was not the only evidence demonstrating his criminal culpability. *See Andre M.*, 207 Ariz. at 487, ¶ 20, 88 P.3d at 557. Also admitted into evidence at trial was a letter Appellant wrote to the victim apologizing for what Appellant and Barragan "ma[d]e [the victim] go through." Additionally, the trial evidence establishes that, when he was alone in the interview room, Appellant telephoned acquaintances and, in addition to making other inculpatory comments, said he was "f---ed. . . . They knew it was me." The jury also heard Cadena's statements to police implicating Appellant. Thus, any error in admitting Appellant's statements made to Detective Roestenberg would be harmless. *See id.*; *see also State v. Shearer*, 164 Ariz. 329, 339–40, 793 P.2d 86, 96–97 (App. 1989) (holding that the introduction of inadmissible evidence was harmless error when the evidence was cumulative to and consistent with other trial testimony).

II.    *State's Disclosure*

**¶17**    Before trial, the State did not intend to call Reyes to testify because neither Appellant nor Cadena noticed a third-party defense. Consequently, the State did not disclose any information about Reyes. The State changed its position in the middle of trial, however, after Cadena's counsel elicited witness testimony that implicated Reyes. Appellant, relying on *Brady v. Maryland*, 373 U.S. 83 (1963), moved to dismiss, or alternatively for mistrial, based on the State's failure to disclose Reyes's criminal history and issues related to his competency to testify. Appellant's trial counsel argued that, without this evidence before trial, she was unable to effectively prepare a defense. The court, finding Reyes would be unable to understand issues regarding use immunity that the State offered him in exchange for his testimony, precluded Reyes from testifying and denied Appellant's motions.

**¶18**    Appellant argues the court erred in denying the motions to dismiss or for mistrial. He specifically contends the undisclosed evidence regarding Reyes's history "could have" been necessary to prepare a third-party defense. We disagree.

**¶19**    A trial court has broad discretion in whether to grant a mistrial or a motion to dismiss. *State v. Walton*, 159 Ariz. 571, 581, 769 P.2d 1017, 1027 (1989); *State v. Huffman*, 222 Ariz. 416, 419, ¶ 5, 215 P.3d 390, 393 (App. 2009). We similarly review the determination of whether the State must disclose evidence for abuse of discretion. *See State v. Cordova*, 198 Ariz. 242, 244, ¶ 6, 8 P.3d 1156, 1158 (App. 1999).

**¶20**    The State must disclose all material information in its possession or control that "tends to mitigate or negate the defendant's guilt as to the offense charged, or which would tend to reduce the defendant's punishment therefor." Ariz. R. Crim. P. 15.1(b)(8); *see also Brady*, 373 U.S. at 87 (holding failure to disclose favorable evidence material to guilt or punishment of the defendant violates due process). Exculpatory evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "There is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. "The mere possibility that an item of undisclosed information might have helped the defense, or might have

affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976).

¶21 Here, the trial court did not abuse its discretion. With respect to Counts 1 and 2, the indictment alleged both principal and accomplice liability. An "accomplice" is a person "who with the intent to promote or facilitate the commission of an offense . . . [a]ids, . . . attempts to aid another person in planning or committing an offense[, or p]rovides means or opportunity to another person to commit the offense." A.R.S. § 13-301(2)–(3). Appellant admitted to being in the vehicle that followed the victim, exiting the vehicle with Barragan, and being armed while Barragan, demanding money, pointed a gun at the victim. Neither Reyes's criminal history nor his mental health issues that affected his competency were material to determining Appellant's culpability as an accomplice to the aggravated assault and attempted armed robbery committed by Barragan.[10] Consequently, the court did not err in denying Appellant's alternative motions to dismiss or for mistrial.

### III. Motion for Mistrial: Prosecutorial Misconduct

¶22 During the State's questioning of Detective Roestenberg regarding Appellant's initial disavowal of any involvement in the crimes, the following colloquy transpired:

*Q.* Okay. D[id] you offer him the ability to take a lie detector test?

*A.* I did.

*Q.* And did he not give you a – that's a horrible question. In response to you saying, hey, man, okay, you didn't do it, why don't you take a lie detector test, did he not give you a straight answer?

¶23 Appellant promptly objected, and on the next day of trial, moved for a mistrial. The court denied the motion and instead immediately instructed the jury as follows: "Mention of a lie detector test is inappropriate and is not admissible. Any reference to a lie detector test will be stricken and is not to be considered by you."

---

[10] Under these circumstances, and even had Appellant's trial counsel known about this evidence pertaining to Reyes before trial, it is difficult to fathom how a third-party defense could have been available to Appellant.

¶24        Appellant contends the court erred in denying his motion for mistrial. He argues the court's curative instruction was insufficient to cure what Appellant implies was prosecutorial misconduct.

¶25        This court will reverse a conviction based on prosecutorial misconduct when there is misconduct by the prosecutor and "a reasonable likelihood . . . that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45, 111 P.3d 369, 382 (2005). "Prosecutorial misconduct 'is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial.'" *State v. Aguilar*, 217 Ariz. 235, 238–39, ¶ 11, 172 P.3d 423, 426–27 (App. 2007) (quoting *Pool v. Super. Ct.*, 139 Ariz. 98, 108–09, 677 P.2d 261, 271–72 (1984)). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Because the trial court is in the best position to determine whether an attorney's remarks require a mistrial, we will not disturb its judgment absent an abuse of discretion. *State v. Tucker*, 215 Ariz. 298, 319, ¶ 88, 160 P.3d 177, 198 (2007).

¶26        We agree with Appellant that the prosecutor's questioning regarding the polygraph was improper. *See State v. Hoskins*, 199 Ariz. 127, 144, ¶ 69, 14 P.3d 997, 1014 (2000), *supplemented*, 204 Ariz. 572, 65 P.3d 953 (2003) (noting "all references to polygraph tests, absent stipulation, are inadmissible for any purpose in Arizona"); *State v. Bowen*, 104 Ariz. 138, 141, 449 P.2d 603, 606 (1969) (stating the evidence of, or reference to, a polygraph test is inadmissible for any reason). The questioning, however, did not amount to misconduct requiring reversal. As the prosecutor explained, she knew that questions pertaining to polygraph *results* are improper, but she mistakenly believed that questions regarding *offers* to take a polygraph were permissible. Thus, the questioning is more properly characterized as a legal error or negligence, not intentional misconduct. Moreover, the comments regarding the polygraph did not permeate the trial to such an extent that Appellant was denied a fair trial. Finally, the court's curative instruction to the jury adequately alleviated any resulting prejudice. *See Bowen*, 104 Ariz. at 141, 449 P.2d at 606 (holding that the trial court's instruction to jury to disregard comment regarding a polygraph and its action of striking it from the record "fully protected the defendant").

Accordingly, the court did not abuse its discretion in denying the motion for mistrial.

## CONCLUSION

¶27    Appellant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama