978 P.2d 644

**In re TIMOTHY C.**

No. 1 CA–JV 97–0232.

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 13, 1998.

Review Denied May 26, 1999.

Lewis and Roca LLP by Edward F. Novak and Douglas J. McDonald, Phoenix, Attorneys for Appellant

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Phoenix, Deputy County Attorney Attorneys for Appellee

## OPINION

NOYES, Judge.

¶ 1 Appellant ("Juvenile") was adjudicated delinquent on a charge of child molestation. The State's case was based on a confession Juvenile gave to a Child Protective Services ("CPS") caseworker after the caseworker promised Juvenile's mother that the case would be closed if he could talk to Juvenile and his siblings. Juvenile argues that his confession was involuntary and should have been suppressed. We agree.

## I.

¶ 2 One day in May 1996, twelve-year-old Juvenile was babysitting his four-year-old sister ("Sister") while their parents and other siblings were at a softball game coached by their father ("Father"). When Juvenile's mother ("Mother") returned home, she saw Sister lying on the couch with her knees up and her panties around her knees. Juvenile was on his knees and was looking at Sister's "bottom area." Mother asked what was going on, and Juvenile said that Sister had something bothering her "down there" and that he was "looking to see if there was something there."

¶ 3 When Father came home, Mother told him what she had seen. Father then talked to Juvenile alone, and Juvenile eventually said that he had kissed Sister "down by her private area." That night, Father and Mother went to their bishop for counseling. The next day, Father and Mother took Juvenile to see a psychologist, so he could determine if Juvenile "had some things going on that [they] didn't know about" and to "make sure that [they] handled the situation properly." After his evaluation, the psychologist concluded that Juvenile did not suffer from any sexual disorder, but he reported the matter to CPS, as required by Arizona Revised Statutes Annotated ("A.R.S.") section 13–3620 (Supp.1997).

¶ 4 On July 26, 1996, CPS caseworker Stephen Richard Miller ("Miller") went to Juvenile's home to investigate the alleged "sexual contact between two children due to inadequate adult parental supervision." After a cordial visit with Mother, Miller determined that appropriate counseling services for Juvenile were in place, that the parents were responding to the matter appropriately, and that Sister did not need to be removed from the home. Miller gave Mother a pamphlet, which stated that CPS had the right to interview "a child who is the subject of an

investigation and the child's brothers, sisters and other children living in the home" without the parents' permission. Miller gave Mother a CPS form, which stated, "I have been informed of my rights and received a copy of the DES pamphlet, 'Child Protective Services—Information for Parents, Caretakers and Children.'" Mother signed the form. Miller told Mother that the case would be closed after he contacted Juvenile's therapist, discussed the case with his (Miller's) supervisor, and interviewed the children.

¶ 5 On August 8, 1996, Miller returned to the family home and again told Mother that he could close the case after interviewing the children. He also said that he had a legal right to interview the children without Mother being present. He showed Mother the back of his badge, which he said contained a statement of the law on this matter. In reliance on these promises and representations, Mother let Miller interview the children alone. When Miller had difficulty talking with Sister, Mother came into the room and tried, without success, to get her to talk to him. Miller testified that Mother was "very cooperative" and that, "I want to attribute [Sister's reluctance] to mostly age."

¶ 6 Prior to questioning Juvenile, Miller did not tell him that he had a right to have a parent present, that he had a right to remain silent, or that his statements might be used against him in criminal proceedings. Miller then questioned Juvenile and obtained the statement on which the State based its criminal case, namely, Miller's testimony that, "Timothy told me that while he was babysitting his sister that he did in fact kiss her vagina."

¶ 7 After Miller obtained Juvenile's confession, he told Mother—for the first time—that he had to report the matter to the police because "there was a possible crime that had been committed and that was something that [he] could not ignore in [his] position." Miller filed a police report. He also closed the CPS case because, in his opinion, of eleven possible risk factors, none were present in this home, there was no risk to the children imminently, and the services that the family had put in place were more than adequate.

About four months later, the State filed a delinquency petition charging Juvenile with child molestation.

¶ 8 Juvenile filed a motion to suppress his confession on grounds that it was involuntary. The court held the suppression hearing and the adjudication hearing together. The State rested after calling Mother and Miller to testify. Counsel then argued the motion to suppress. The court, after summarizing all the circumstances it had considered, found as follows on the motion:

> [T]he juvenile's parents were advised in writing that they had a right to refuse to cooperate. The caseworker did have a right to interview the child in this case, or because he is a sibling of the child that was the subject of the complaint of child abuse he had a right to interview that child and any other siblings of [the sister] without the prior written permission of the parent.
>
> . . . .
>
> ... This is definitely a State action. There is no doubt whatsoever.
>
> It's a State action under the State's police power in the general sense. It was not a custodial interrogation and no Miranda warnings were given. The mother was cooperative in this case after being advised of her rights and the family's rights and after being advised that the family was under investigation. The juvenile was cooperative. The juvenile in this case is of at least average intelligence and appeared not to be nervous, upset or distracted or disturbed in any way. He is age-appropriate in school. The promises made by the caseworker was that it would be closed and apparently the caseworker followed through with that promise. The case as far as CPS was concerned was closed.
>
> After considering all of the circumstances in this case I do find the statements were made voluntarily by the juvenile in this case. I'm focusing on the conduct of the State official and the juvenile's response, and I have also included some of the conduct and responses of the juvenile's family, that they are voluntary statements under these circumstances.

The court denied the motion to suppress. The adjudication hearing continued, with Father being the only witness called by the defense. The court adjudicated Juvenile delinquent as charged.

¶ 9 At disposition, the court placed Juvenile on probation with special terms and conditions, including orders that the parents pay a $40 monthly probation service fee; that Juvenile submit to DNA testing for law enforcement identification purposes; and that Juvenile undergo counseling under the direction of the probation department. Juvenile was also advised that he was now a "first time felony juvenile defendant."

¶ 10 Juvenile filed a timely notice of appeal. We have jurisdiction pursuant to Rules 24 through 29, Rules of Procedure for the Juvenile Court.

## II.

¶ 11 In *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the Fifth Amendment privilege against compulsory self-incrimination applies in custodial interrogations and is binding on all states. Juvenile does not argue that he was in custody, and he does not argue that he should have received *Miranda* warnings. Juvenile argues that his confession was involuntary under the Fourteenth Amendment Due Process Clause.

¶ 12 Whether or not a suspect is in custody, all confessions "must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness." *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *In re Gault*, 387 U.S. 1, 30–31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that the guarantees of due process apply to juvenile proceedings); *see also United States v. Bradshaw*, 935 F.2d 295, 299 (D.C.Cir. 1991) ("[T]he Constitution requires that a

confession be voluntary quite apart from whether or not *Miranda*'s prophylactic procedures are followed."); *Miller v. Dugger*, 838 F.2d 1530, 1535 (11th Cir.1988) ("It is now clear, however, that the requirements of *Miranda*'s prophylactic rules can diverge significantly from the force of the prohibition in the due process clause itself against the introduction of involuntary statements.").

¶ 13 Confessions are presumed to be involuntary, and the State must rebut this presumption by a preponderance of the evidence. *State v. Amaya–Ruiz*, 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990); *State v. Jimenez*, 165 Ariz. 444, 448–49, 799 P.2d 785, 789–90 (1990); *Navajo County Juv. Action No. JV91000058*, 183 Ariz. 204, 206, 901 P.2d 1247, 1249 (App.1995); *Maricopa County Juv. Action No. JV–501010*, 174 Ariz. 599, 601, 852 P.2d 414, 416 (App.1993). We will not reverse a determination that a confession is voluntary absent clear and manifest error.[1] *Amaya–Ruiz*, 166 Ariz. at 164, 800 P.2d at 1272; *Jimenez*, 165 Ariz. at 449, 799 P.2d at 790; *Juvenile Action No. JV–501010*, 174 Ariz. at 601, 852 P.2d at 416.

¶ 14 A due process claim must be based on "state action." In *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." This holding should not be read so narrowly, however, as to limit the inquiry to "the actions of traditional 'law enforcement' personnel." *United States v. D.F.*, 857 F.Supp. 1311, 1325 (E.D.Wis.1994), *aff'd*, 63 F.3d 671 (7th Cir.1995), *cert. granted*, 517 U.S. 1231, 116 S.Ct. 1872, 135 L.Ed.2d 169 (1996) (remanded for reconsideration in light of *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)), *aff'd*, 115

---

1. Some federal courts conduct a *de novo* review of the trial court's ultimate finding of voluntariness, while applying a clearly erroneous standard to its factual findings. *See, e.g., United States v. D.F.*, 115 F.3d 413, 419 (7th Cir.1997) (relying on *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)); *see also United States v. Wolf*, 813 F.2d 970, 974 (9th Cir.1987); *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir.1994). Our supreme court has not made this distinction. We therefore review both the findings of fact and the ultimate finding of voluntariness for clear and manifest error, for "[w]e are bound by decisions of the Arizona Supreme Court...." *Myers v. Reeb*, 190 Ariz. 341, 342, 947 P.2d 915, 916 (App.1997).

F.3d 413 (7th Cir.1997). Rather, "coercive police activity" in the context of due process can include "the actions of the juvenile court system, the legislature, [and] other government officials...." *Id.* (holding that staff members at residential treatment center, working in conjunction with CPS, the juvenile court, and the FBI, were state actors for purposes of voluntariness analysis).

¶ 15 We agree with the juvenile court's finding that Miller's questioning was "definitely a State action ... under the State's police power in the general sense." Miller was required by law to "immediately ... [n]otify the municipal or county law enforcement agency" of the results of his investigation. *See* A.R.S. § 8–546.01(C)(3)(a) (Supp.1997). Miller testified that, "If it appears that a crime has been committed ... I'm mandated by our agency to report it to the police." *Cf. D.F.*, 857 F.Supp. at 1325–26 (finding that residential treatment center staff who were permitted, but not required, to report admissions of child abuse were state actors). We hold that the CPS caseworker was a state actor for purposes of a due process analysis. We now turn to the voluntariness of the confession obtained by that state actor.

¶ 16 A confession is not voluntary if, under the totality of the circumstances, it was not the "product of rational intellect and free will." *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *D.F.*, 857 F.Supp. at 1324. In examining the totality of the circumstances, a number of factors are relevant, including defendant's age, education, and intelligence; any advice to defendant of constitutional rights; the length of detention and questioning; and use of physical force. *See D.F.*, 857 F.Supp. at 1324; *see also Jimenez*, 165 Ariz. at 449, 799 P.2d at 790 (warning that, when considering a juvenile confession, the greatest care must be taken to ensure that "it was not the product of ignorance of rights or of adolescent fantasy, fright or despair").

¶ 17 A confession is also not voluntary if it is induced by threats or violence, direct or implied promises (however slight), or improper influence. *Juvenile Action No.* *JV91000058*, 183 Ariz. at 206, 901 P.2d at 1249; *Juvenile Action No. JV–501010*, 174 Ariz. at 601, 852 P.2d at 416 (quoting *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). "A confession is rendered involuntary as the result of a promise if two requirements are met: first, there must be an express or implied promise, and second, the defendant must rely on the promise in making the confession." *Id.* In this case, the CPS caseworker made promises that were misleading and used influence that was improper when investigating a suspected juvenile criminal.

¶ 18 Mother testified that Miller promised that the case would be closed after he spoke to the children, and that it "would be in both of our best interests to do that as quickly as possible." Miller denied making that promise, but the court believed Mother; it found that "[t]he promises made by the caseworker [were] that it would be closed and apparently the caseworker followed through with that promise. The case as far as CPS was concerned was closed." What the court failed to note, however, was that Miller's promise was misleading. Miller knew that he was obtaining information for two potential cases, the CPS case and a criminal case, but he let Mother believe that there was only one case, the CPS case, and that it would be closed if he could talk to the children.

¶ 19 Based on Miller's promise that the case would be closed if he could talk to the children, Mother let him do so. Had Mother known that Miller was also gathering evidence for a potential criminal prosecution of her son, she would not have allowed Miller to interview him. The State argues that Mother's knowledge (or lack thereof) of Juvenile's rights is irrelevant in determining whether Juvenile's confession was voluntary. We disagree. Although failure to notify parents of a juvenile's constitutional rights no longer renders a confession inadmissible *per se*, parental knowledge of those rights, and consent to waive them, is relevant to the totality of the circumstances surrounding the confession. *See Jimenez*, 165 Ariz. at 450–51, 799 P.2d at 791–92.

¶ 20 The State argues, and the juvenile court agreed, that Juvenile's confession was voluntary because Mother was advised of her right to refuse to cooperate with CPS and Miller. Mother was so advised, but the advice was misleadingly incomplete, in the context of this criminal case. Neither Miller nor the CPS pamphlet advised Mother that anything her son said to CPS would be reported to police and could be used against him in a criminal prosecution.

¶ 21 The pertinent part of the CPS pamphlet reads as follows:

It is hoped that the family will cooperate with the CPS worker. Families have the right to be informed that:

- They are under investigation.
- They may refuse to cooperate with the investigation or participate in services.
- Refusal to cooperate with the investigation or participate in services is not grounds for taking temporary custody of a child.
- CPS has the authority to proceed with the investigation and, if necessary, to take temporary custody of the child and/or file a Dependency Petition.

In the context of a case in which CPS is soliciting cooperation from the parents of a suspected juvenile criminal, this warning is misleadingly incomplete, if the State later decides to use the resulting confession against the juvenile in a criminal case.

¶ 22 The CPS caseworker also exerted improper influence to obtain the Juvenile's confession. Miller told Mother that he had a legal right to interview the children without her being present, and he showed his purported written authority for this statement. At trial, Miller said he "[could not] recite ... the statute that that's based on. That's just the way we do our investigations."

¶ 23 Section 8-546.01(C)(2)(b) (Supp.1997) authorizes CPS to interview the subject of a child abuse investigation, the subject's siblings, or other children in the home "without the prior written consent of the parent, guardian or custodian of the child." This statute, which is the only possible source of Miller's asserted right to interview children as he did here, applies when CPS is interviewing a juvenile who is the suspected *victim* of child abuse, or that child's siblings (or other children in the home). *See* Mary J. Alexander, *Protecting Children from Parents Who Provide Insufficient Care—Temporary and Permanent Statutory Limits on Parental Custody,* 1980 Ariz. St. L.J. 953, 959 (noting that focus of statutes authorizing CPS workers to investigate allegations of child abuse is on child victim and other potential child victims living within the home). In this case, Miller was interviewing Juvenile as a suspected criminal: as the victim's alleged molester.

¶ 24 When a CPS investigation of a suspected juvenile criminal results in a confession that the State later tries to use against the juvenile in criminal proceedings, due process considerations come into play. Section 8-546.01(C)(2)(b) cannot trump the due process clause in a criminal case. *See Maricopa County Juv. Action No. J-86715,* 122 Ariz. 300, 302, 594 P.2d 554, 556 (App. 1979) (holding that delinquency proceedings must comport with minimum due process requirements); *see also Gault,* 387 U.S. at 30-31, 87 S.Ct. 1428.

¶ 25 We hold that the State failed to overcome the presumption that Juvenile's confession was involuntary. The record contains no evidence that Juvenile was aware of his rights, and it contains convincing evidence that Juvenile's confession was induced by promises from the CPS caseworker that were misleading, and by use of influence that was improper, in the context of a criminal case.

**III.**

¶ 26 On this record, the finding of voluntariness was manifestly erroneous. The adjudication is therefore reversed and the case is remanded with directions to suppress the confession.

CONCURRING: THOMAS C. KLEINSCHMIDT, Judge, and PHILIP E. TOCI, Judge.