SUPREME COURT OF ARIZONA
En Banc

|  |  |  |
|---|---|---|
| IN RE ANDRE M. | ) | Arizona Supreme Court |
|  | ) | No. CV-03-0228-PR |
|  | ) |  |
|  | ) | Court of Appeals |
|  | ) | Division Two |
|  | ) | No. 2 CA-JV 2002-0078 |
|  | ) |  |
|  | ) | Pima County Superior |
|  | ) | Court |
|  | ) | No. 15091501 |
|  | ) |  |
|  | ) | **O P I N I O N** |
|  | ) |  |
| _____ | ) |  |

Appeal from Superior Court of Pima County
No. 15091501
The Honorable Charles V. Harrington
**REVERSED**

_____

Memorandum Decision of Court of Appeals, Division Two
2 CA-JV 2002-0078, Filed May 30, 2003
**VACATED**

_____

Lee Tucker                                                    Tucson
Attorney for Andre M.

Barbara LaWall, Pima County Attorney                          Tucson
     by   Michael A. Colmenero, Deputy County Attorney
     and  Elizabeth Hurley, Deputy County Attorney
Attorneys for the State of Arizona

_____

M c G R E G O R, Vice Chief Justice

¶1      We  granted  review  to  consider  the  standard  for
determining the voluntariness of a juvenile's confession when a
parent has been denied access to her child's interrogation.  We

exercise jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 12-120.24 (2003).

## I.

¶2        On the morning of February 6, 2002, Andre M., then sixteen and one-half years old, was sent to his principal's office at Pueblo High School in Tucson after a reported fist fight in which Andre allegedly had been involved. Shortly thereafter, police officers arrived on the school grounds and briefly interviewed Andre about the fight. The school also contacted Andre's mother, who arrived at the school after this interview and sat with the assistant principal and Andre as Andre awaited further questioning by the police. During this time, the police discovered a sawed-off shotgun that was apparently connected to Andre in the trunk of another student's car. Andre's mother was unaware of this discovery and did not know that the police intended to question Andre about any subject other than the fight.

¶3        At approximately 2:10 p.m., Andre's mother told the assistant principal that she needed to pick up her young daughter from another school. The assistant principal assured Andre's mother that if she did not return in time to be present during the police questioning, either the assistant principal or another administrator would sit in on the interview. Upon

2

receiving this assurance, Andre's mother left to pick up her daughter. The assistant principal, however, neglected to tell the police officers of Andre's mother's wish that either she or an administrator be present if Andre were questioned.

¶4    When Andre's mother returned to the high school twenty minutes later, she found Andre in a closed room being questioned by three officers. She attempted to enter the room in which her son was being interrogated, but a police officer seated outside the room prevented her from doing so. The police officers continued questioning Andre for another five to ten minutes.

¶5    During proceedings in juvenile court, Andre moved to suppress the statements he made to the police officers during the second interview, in which he admitted to possessing a deadly weapon on school grounds and to possessing a firearm as a minor. Andre argued that his statements had been made in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), because 1) he had not knowingly, intelligently, and voluntarily waived his rights; 2) he had been questioned in an atmosphere of fear and intimidation; and 3) he had been questioned without his mother being present. The juvenile court denied the motion, adjudicated Andre delinquent, and placed him on probation for one year. The court of appeals, after considering the "totality of the circumstances" surrounding the interrogation, affirmed. *In re Andre M.*, 2 CA-JV 2002-0078 ¶ 12 (Ariz. App. May 30, 2003)

(mem. decision). We granted review to consider the impact of a parent's exclusion upon the voluntariness of a juvenile's confession.

## II.

¶6    The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.[1]  In *Miranda*, the Supreme Court held that this privilege against compulsory self-incrimination applies in all custodial interrogations and binds the states. 384 U.S. at 478; *see also Chavez v. Martinez*, ___ U.S. ___, ___ (2003) ("[T]he *Miranda* exclusionary rule [is] a prophylactic measure to prevent violations of the right protected by the text of the Self-Incrimination Clause—the admission into evidence in [a] criminal case of confessions obtained through coercive custodial questioning."). A defendant may waive his *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444; *see also State v. Jimenez*, 165 Ariz. 444, 449, 799 P.2d 785, 790 (1990) ("To be voluntary, a confession must not only be free from coercion, but the defendant's waiver of his constitutional rights must be knowing and intelligent.").

---

[1]    The Arizona Constitution includes a similar provision: "No person shall be compelled in any criminal case to give evidence against himself . . . ." Ariz. Const. art. 2, § 10.

4

¶7      In determining whether a defendant has voluntarily, knowing and intelligently waived his rights, a court must assure that the state establishes two factors:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

¶8      When a defendant alleges that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights, we begin with the presumption that "confessions resulting from custodial interrogation are inherently involuntary; to rebut that presumption, the state must show by a preponderance of the evidence that the confession was freely and voluntarily made." *Jimenez*, 165 Ariz. at 448-49, 799 P.2d at 789-90. The burden of establishing that a confession is voluntary always remains with the state.

¶9      The state's task of establishing the voluntariness of a statement becomes more difficult when a juvenile is involved. Because of the increased susceptibility and vulnerability of juveniles, courts exhibit a heightened concern with the voluntariness of confessions by juveniles:

> When a juvenile confession occurs as a result of police questioning, the "greatest care must be taken to assure that the admission was voluntary, in the

5

sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair."

*Id*. at 449, 799 P.2d at 790 (quoting *In re Gault,* 387 U.S. 1, 55 (1967)).

¶10     Andre argues that the police officers, by denying his mother access to his interrogation, deliberately and without cause, created an atmosphere of fear and intimidation, rendering his confession involuntary.  Andre urges this court to hold that if the police deliberately exclude a parent from his or her child's interrogation, without good cause to do so, any resulting statement must be suppressed.  In response, the State argues that the court of appeals correctly affirmed the juvenile court's denial of Andre's motion to suppress under the totality of the circumstances approach.  Although we decline Andre's invitation to adopt a per se rule of exclusion, for the reasons stated below, we agree that the juvenile court failed to give appropriate weight to the exclusion of Andre's mother.

**A.**

¶11     To determine whether a confession is voluntary, we consider the totality of the circumstances surrounding the confession.  *Id*. at 449, 799 P.2d at 790; *State v. Doody*, 187 Ariz. 363, 368, 930 P.2d 440, 445 (App. 1997).  When a juvenile confession is involved, a number of factors are relevant to the totality of the circumstances analysis, "including defendant's

6

age, education, and intelligence; any advice to defendant of constitutional rights; the length of detention and questioning; and use of physical force." *In re Timothy C.*, 194 Ariz. 159, 163 ¶ 16, 978 P.2d 644, 648 (App. 1998). We previously have noted that "[t]he presence of the child's parents or their consent to a waiver of rights is only *one* of the elements to be considered by the trial court in determining that the statement was voluntary and the child intelligently comprehended his rights." *State v. Hardy*, 107 Ariz. 583, 584, 491 P.2d 17, 18 (1971); *see also State v. Huerstel*, ___ Ariz. ___, ___ ¶ 52, 75 P.3d 698, 711 (2003) ("[T]he absence of a parent during the questioning of a juvenile does not itself render a confession involuntary, rather it is considered as a factor in the totality of the circumstances analysis."). But the state can more easily satisfy the two-pronged inquiry of *Moran* if a parent attends a juvenile's interrogation. First, a parent can help ensure that a juvenile will not be intimidated, coerced or deceived during an interrogation and that any confession is the product of a free and deliberate choice. Second, the presence of a parent makes it more likely that the juvenile will be aware of the nature of the right being abandoned and will understand the consequences of a decision to abandon that right. If a parent is not present, therefore, the state faces a more daunting task of showing that the confession was neither coerced nor the

result of "ignorance of rights or of adolescent fantasy, fright or despair" than if the parent attends the interrogation.

**¶12**     In the case at hand, we deal with not simply the *absence* of a parent during an interrogation, but with the absence of a parent who attempted to attend the interrogation but was prevented from doing so by the police officers.   We conclude that in evaluating the voluntariness of a juvenile's confession under the totality of the circumstances standard, a court should consider conduct by law enforcement personnel that frustrates a parent's attempt to confer with his or her child, prior to or during questioning, to be a particularly significant factor in determining whether the confession was given voluntarily, knowingly and intelligently.[2]

---

[2]     The instant facts can be distinguished from recent decisions such as *State v. Huerstel*, ___ Ariz. ___, 75 P.3d 698 (2003), in which this court concluded that the totality of the circumstances justified holding that Huerstel's confessions were voluntary.  *Huerstel* involved a triple murder for which Huerstel was in custody.   At the police station, where he was interrogated, two officers advised Huerstel of his *Miranda* rights, and he waived them.  *Id*. at ___ ¶44, 75 P.3d at 710. Huerstel initially denied involvement with the alleged crime, but confessed during a second interrogation.  *Id*. at ___ ¶ 47, 75 P.3d at 710.   The next morning, during a third interview in an office at the jail, Huerstel confessed a second time.  *Id*. at ___ ¶ 49, 75 P.3d at 710.   Significantly, in none of these instances was a parent present and physically prohibited from entering the interrogation room.  *Id*. at ___ ¶ 52, 75 P.3d at 710-11.    Moreover, the trial judge obviously relied upon Huerstel's recorded confession, which he described as "notable for its lack of emotion and content."  *Id*. at ___ ¶ 58, 75 P.3d at 711.    In addition, evidence indicated a non-coercive atmosphere.  *Id*.

8

¶13     We recognize that circumstances may justify, or even require, the exclusion of a parent. For example, a juvenile may request or insist that his parent not be present. In other situations, a parent's actions may justify his or her exclusion. If a parent is disruptive or threatens the officers or child at the time of the interrogation, the presence of the parent probably will not aid the juvenile in understanding his rights or the consequences of waiving them. Likewise, a parent's presence generally will not be justified if the incident to which the police respond involves allegations against the parent. External circumstances also may require that questioning proceed in the parent's absence. For instance, if time is of the essence and a speedy interrogation of a juvenile is necessary to further the safety or security of others, police officers may be justified in conducting an interrogation even if the parent is not present. Other factors that make up the totality of the circumstances surrounding a particular interrogation also will affect whether an interrogation may proceed in the absence of a parent.

¶14     When, however, the state fails to establish good cause for barring a parent from a juvenile's interrogation, a strong inference arises that the state excluded the parent in order to maintain a coercive atmosphere or to discourage the juvenile

from fully understanding and exercising his constitutional rights. *See*, *e.g.*, *In re State ex rel. Carlo*, 225 A.2d 110, 119 (N.J. 1966) ("The refusal by the police . . . to permit the parents access to their sons during the interrogations might well be sufficient in itself to show that the confessions were involuntary . . . ."); *In re J.J.C.*, 689 N.E.2d 1172, 1180 (Ill. App. Ct. 1998) ("[W]e hold that when a juvenile's parents are present, request to confer with their child, and are effectively refused by the law enforcement authorities, the presumption arises that the juvenile's will is overborne.").

¶15     In this case, the record reveals no justification for excluding Andre's mother. Andre did not ask the police to bar his mother from the questioning. Andre's mother was neither abusive nor disruptive. Indeed, the only reason suggested by the State for excluding her was that it would have been inconvenient for the police to interrupt the interrogation and advise Andre of his *Miranda* rights in the presence of his mother. Such limited inconvenience, however, cannot justify the exclusion of Andre's parent when her presence was so important to assuring that he understood the rights guaranteed him.

**B.**

¶16     Because we consider the totality of the circumstances in determining the voluntariness of a confession, the fact that Andre's mother was excluded, of itself, does not require that we

10

find Andre's confession involuntary. The State, however, must overcome both the initial presumption of involuntariness and the added inference that arises from the exclusion of Andre's mother without cause.

¶17    To meet its burden, the State relies upon several factors. Andre, who was sixteen and one-half years old at the time of the questioning, appeared to be of normal intelligence. He was interviewed at his school rather than at a police station, which suggests a less coercive or frightening environment. In addition, the interview lasted a relatively short time, and certainly the record includes no suggestion that the police officers used physical force to make Andre confess.

¶18    On the other hand, the record does not contain the type of evidence typically offered by the state to bolster its showing of voluntariness. Although Andre apparently received *Miranda* warnings at some point, the record does not tell us whether Andre received age-appropriate warnings. The administration of such warnings would have helped the State carry its burden. The record also includes no signed acknowledgement to indicate that Andre received and understood his *Miranda* rights. Finally, although the police apparently recorded at least a portion of their interview with Andre, the tape recording of the interview is not part of the record of these proceedings. Such a tape recording would have assisted

11

the juvenile judge and this court in ascertaining whether the police officers used improper methods or created a coercive atmosphere.

¶19    We review the trial court's determination that Andre voluntarily confessed under an abuse of discretion standard. *See Huerstel*, ___ Ariz. at ___ ¶ 50, 75 P.3d at 710.  In this case, the limited evidence the State offered to establish that Andre's statements were voluntary, coupled with the negative inference that arises from the police officers' unjustified exclusion of Andre's mother from the interrogation, leads us to conclude that the juvenile judge clearly erred in admitting Andre's statements.

¶20    That error does not necessarily require that we vacate the juvenile court's judgment.  "Error is harmless if the reviewing court can say beyond a reasonable doubt that the error did not contribute to the verdict."  *State v. Davolt*, ___ Ariz. ___, ___ ¶ 39, 84 P.3d 456, 470 (2004); *see also State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) ("Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict.").  In this instance, we cannot find the error harmless.  Because Andre's statements comprised almost the entirety of the evidence presented by the State in support of the charges against Andre, we cannot say beyond a reasonable

12

doubt that the juvenile court would have found Andre delinquent in the absence of these statements.

### III.

¶**21**    For the foregoing reasons, we vacate the decision of the court of appeals and reverse the judgment of the juvenile court.


_____
Ruth V. McGregor, Vice Chief Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice

_____
Rebecca White Berch, Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

13