IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-SA 2012-0065 |
| Petitioner, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| HON. JANE A. BUTLER, Judge Pro | ) | |
| Tempore of the Superior Court of the | ) | |
| State of Arizona, in and for the County | ) | |
| of Pima, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TYLER B., | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. JV19004301

JURISDICTION ACCEPTED; RELIEF GRANTED

Barbara LaWall, Pima County Attorney
  By Nicolette Kneup                                                    Tucson
                                                     Attorneys for Petitioner

Hernandez & Robles, P.C.
  By Joshua F. Hamilton                                                 Tucson
                                          Attorneys for Real Party in Interest

E S P I N O S A, Judge.

¶1 In this special action arising from a juvenile delinquency proceeding against Tyler B., the state maintains the juvenile court abused its discretion in granting Tyler's motion to suppress the results of a blood test, taken pursuant to Arizona's implied consent law without his parents' consent. We agree and, because the state has no equally plain or speedy remedy by appeal, accept special action jurisdiction and reverse the court's ruling.

¶2 Our exercise of special action jurisdiction is appropriate when a party has no "equally plain, speedy, and adequate remedy by appeal." Ariz. R. P. Spec. Actions 1(a). This is particularly so when the issue presented is a purely legal question. *State ex rel. Romley v. Martin*, 203 Ariz. 46, ¶ 4, 49 P.3d 1142, 1143 (App. 2002), *aff'd*, 205 Ariz. 279, 69 P.3d 1000 (2003). Here, as the state points out, because Tyler will turn eighteen in March 2013, the state has no equally plain or speedy remedy by appeal.[1] *See* A.R.S. § 8-246 (juvenile court retains jurisdiction until minor's eighteenth birthday). Also, the matter may be resolved solely on the basis of two legal questions—whether

---

[1] Both parties assert that the state is able to appeal suppression orders pursuant to A.R.S. § 13-4032. Although this is true in criminal cases, neither party cites any authority to support the application of that statute in the juvenile context. Appeals from delinquency adjudications are controlled by A.R.S. § 8-235, which provides, "Any aggrieved party in any juvenile court proceeding under this title may appeal from a final order of the juvenile court to the court of appeals in the manner provided in the Arizona rules of procedure for the juvenile court as adopted or approved by the Arizona supreme court."

Arizona's Parents' Bill of Rights is applicable to the blood test at issue here and whether Tyler's consent to that test was obtained constitutionally.

¶3 In February 2012, a monitor at Tyler's school noticed him and two other students arriving late to school and smelled marijuana on their clothing. The monitor searched the vehicle in which they had arrived and found drug paraphernalia inside. School officials reported the incident, and Pima County Sheriff's Deputy Eric Heath responded. After Heath informed Tyler of his rights pursuant to *Miranda*,[2] Tyler admitted he and his friends had left school, smoked marijuana, and then returned to campus, with Tyler driving the vehicle. Heath then informed Tyler he was under arrest for driving under the influence (DUI). When Tyler became agitated and upset, Heath placed him in handcuffs for a brief period, removing them after less than ten minutes. After Tyler had calmed down, Heath read him the admonitions contained in an "admin per se/implied consent affidavit," and Tyler agreed, both verbally and in writing, to submit to blood testing pursuant to A.R.S. § 28-1321.

¶4 School administrators also contacted Tyler's parents. His father arrived and checked in with the office, and his mother arrived sometime shortly thereafter. Tyler's father waited in the lobby for about thirty minutes until the assistant principal told him there was a "situation with Tyler." Tyler's father was aware the police were present because he had seen a patrol vehicle outside and saw Officer Heath go out to the vehicle to get his blood-testing kit. But Heath was not informed Tyler's father had arrived until

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

after he had finished drawing Tyler's blood. At that point, about ten minutes after the assistant principal had spoken to them, Tyler's parents were called into the office where Tyler was and were told he had been "caught smoking marijuana" and arrested for DUI. They were never asked for permission to draw or test Tyler's blood.

¶5 Before his delinquency hearing, Tyler moved to suppress the results of his blood test, arguing his consent to the test had not been voluntary and he lacked the legal capacity to consent due to his age. After a hearing on the matter, the juvenile court granted the motion, concluding that the Parents' Bill of Rights "includes the right to consent in writing before any record of the minor child's blood . . . is created[,] shared or stored" and did not include an exception for the implied consent law. The court also concluded Tyler's consent to the test had not been voluntary.[3] We review a juvenile court's finding on voluntariness for an abuse of discretion, *In re Andre M.*, 207 Ariz. 482, ¶ 19, 88 P.3d 552, 556 (2004), which includes an error of law. *In re Erika V.*, 194 Ariz. 399, ¶ 2, 983 P.2d 768, 769 (App. 1999) ("In exercising its discretion . . . the juvenile court may not misapply the law or a legal principle."). And we review de novo a court's interpretation and application of a statute. *In re Paul M.*, 198 Ariz. 122, ¶ 1, 7 P.3d 131, 132 (App. 2000).

---

[3]Tyler's motion to suppress asked that the juvenile court suppress "any and all evidence derived" from the blood test, and the court broadly granted that motion. But based on its comment that "this case does not raise the issue of whether Tyler's confession was voluntary," the court apparently only suppressed the results of the blood test, and we therefore address only the propriety of the suppression of that evidence.

¶6          In its petition, the state first contends that Arizona's Parents' Bill of Rights, A.R.S. §§ 1-601 through 1-602, on which the juvenile court relied in part, is inapplicable here. We agree. Section 1-602(A)(8) gives parents "[t]he right to consent in writing before any record of the minor child's blood or deoxyribonucleic acid is created, stored or shared," except as required or authorized by certain statutes or authorized by court order. But § 1-602(B) provides that the "section does not prohibit courts, law enforcement officers or employees of a government agency responsible for child welfare from acting in their official capacity within the scope of their authority." Thus, even assuming that a blood test taken during a DUI investigation qualifies as a "record of the minor child's blood," § 1-602(A)(8) is inapplicable when, as here, a law enforcement officer draws the blood in the course of his duties in investigating a crime. Therefore, to the extent the juvenile court relied on the Parents' Bill of Rights in concluding Tyler's blood test results should be suppressed, it erred in applying the statute and abused its discretion.[4]

¶7          Relying on *Andre M.*, 207 Ariz. 482, 88 P.3d 552, the juvenile court also concluded Tyler's consent to the blood test was involuntary. The state contends this

_____

[4]We also reject Tyler's argument that, because other statutes require parental permission for blood draws for medical or voluntary reasons, such permission is required pursuant to the implied consent statute. The statute includes no such requirement, and, had the legislature intended to impose such a constraint, it certainly could have done so. *See State v. Gamez*, 227 Ariz. 445, ¶ 30, 258 P.3d 263, 268 (App. 2011) (if legislature intended to require state to prove defendant's knowledge of victim's age "it would have said so").

5

conclusion was an abuse of discretion and points out that "every driver gives implied consent to a blood draw under the implied consent statute."

¶8 Section 28-1321(A) provides:

> A person who operates a motor vehicle in this state gives consent . . . to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if the person is arrested for any offense arising out of acts alleged to have been committed in violation [of the DUI statutes] . . . .

Although "the 'consent' referenced in subsection (A) [does not] authorize[] warrantless testing of all persons arrested for [DUI]," when a person is arrested for DUI he or she is not truly asked again to "consent" to a test, but rather must decide whether to refuse or withdraw consent by failing to expressly agree to submit to the test. *Carrillo v. Houser*, 224 Ariz. 463, ¶¶ 11, 18, 232 P.3d 1245, 1247, 1248 (2010) ("[A]n arrestee's failure to expressly agree constitutes a refusal," and "[t]he implied consent . . . statutorily disclaims any asserted 'right' by an arrestee to refuse testing."); *see also* § 28-1321(C) (person incapable of refusal "deemed not to have withdrawn the consent provided").

¶9 The implied consent statute also states that, if a person refuses to submit to a blood, breath, or urine test, "[t]he test shall not be given, except as provided in § 28-1388, subsection E or pursuant to a search warrant." § 28-1321(D)(1). Under the statute, therefore, a DUI arrestee has the power, but not the right, to refuse to submit to such testing. *See State ex rel. Verburg v. Jones*, 211 Ariz. 413, ¶ 9, 121 P.3d 1283, 1285 (App. 2005); *Tornabene v. Bonine ex rel. Ariz. Highway Dep't*, 203 Ariz. 326, ¶ 19, 54

6

P.3d 355, 363 (App. 2002); *State v. Krantz*, 174 Ariz. 211, 215, 848 P.2d 296, 300 (App. 1992).

¶10        Unlike the statements to police officers at issue in *Andre M.*, blood evidence is not testimonial and therefore is not subject to suppression on a Fifth Amendment voluntariness basis, *State v. White*, 102 Ariz. 162, 164, 426 P.2d 796, 798 (1967), *citing Schmerber v. California*, 384 U.S. 757 (1966), and neither is the refusal to submit to blood testing, *State v. Superior Court*, 155 Ariz. 408, 411, 747 P.2d 569, 572 (1987); *State v. Superior Court*, 154 Ariz. 574, 578, 744 P.2d 675, 679 (1987).  And, although a defendant's understanding that police are requesting a blood test may be relevant to a due process analysis,[5] "the use of the term voluntary in the sense of intelligent and knowing has no relevancy to the matter."  *State v. Superior Court*, 155 Ariz. at 411-12 & 411, 747 P.2d at 572-73 & 572.[6]  Thus, the juvenile court's reliance on *Andre M.* and notions of voluntariness for Fifth Amendment purposes was misplaced, and it therefore abused its discretion in suppressing the results of Tyler's blood test.  In view

---

[5]Because the record here does not suggest Tyler did not understand what was being asked of him, we do not address whether due process would require any such understanding when a defendant expressly agrees to a test and thereby avoids the statutory penalty for refusal.  *See State v. Superior Court*, 155 Ariz. 403, 407, 747 P.2d 564, 568 (App. 1986) ("Basic due process requires that in order for a person to be penalized for disobeying a request, that person must understand what is being requested . . . ."), *approved as supplemented by State v. Superior Court*, 155 Ariz. 408, 747 P.2d 569.

[6]We also note the informed consent statute presents no Fourth Amendment issue.  *Campbell v. Superior Court*, 106 Ariz. 542, 554, 479 P.2d 685, 697 (1971); *State v. Noceo*, 223 Ariz. 222, ¶ 7, 221 P.3d 1036, 1038-39 (App. 2009).

of this conclusion, we need not address the state's argument that "Tyler's blood result would inevitably have been discovered" and therefore was admissible.

¶11     For all the above reasons, special-action jurisdiction is accepted and relief is granted.


/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:


/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge