SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CV-12-0402-PR |
| Petitioner, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-SA 12-0065 |
| HON. JANE A. BUTLER, JUDGE PRO | ) | |
| TEMPORE OF THE SUPERIOR COURT OF | ) | Pima County |
| THE STATE OF ARIZONA, in and for | ) | Superior Court |
| the County of Pima, | ) | No. JV19004301 |
| | ) | |
| Respondent Judge, | ) | |
| | ) | |
| TYLER B., | ) | **O P I N I O N** |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

Appeal from the Superior Court in Pima County
The Honorable Jane A. Butler, Commissioner Pro Tem

**REMANDED**

---

Opinion of the Court of Appeals, Division Two
231 Ariz. 42, 290 P.3d 435 (2012)

**REVERSED**

---

BARBARA LAWALL, PIMA COUNTY ATTORNEY                    Tucson
      By   Nicolette Kneup, Deputy County Attorney
Attorneys for State of Arizona

HERNANDEZ & ROBLES PC                                   Tucson
      By   Joshua F. Hamilton
Attorneys for Tyler B.

ARIZONA ATTORNEYS FOR CRIMINAL JUSTICE                  Chandler
      By   David J. Euchner
Attorneys for Amicus Curiae Arizona Attorneys for Criminal
Justice

NESCI & ST LOUIS PLLC                                           Tucson
    By   James Nesci
Attorneys for Amicus Curiae National College for DUI Defense,
Inc.

ACLU FOUNDATION OF ARIZONA                                    Phoenix
    By   Daniel Pochoda
         Kelly J. Flood
And

PERKINS COIE LLP                                             Phoenix
    By   Jean-Jacques Cabou
         Thomas D. Ryerson
Attorneys for Amicus Curiae ACLU Foundation of Arizona

JUVENILE LAW CENTER                              Philadelphia, PA
    By   Lourdes M. Rosado

And

NUCCIO & SHIRLY                                               Tucson
    By   Jeanne Shirly
Attorneys for Amici Curiae Juvenile Law Center, Center on
Children and Families, Central Juvenile Defender Center,
Children and Family Justice Center, The Children's Law Center
Inc., Children & Youth Law Clinic, Civitas ChildLaw Center,
Juvenile & Special Education Law Clinic/University of the
District of Columbia, Juvenile Justice Project of Louisiana,
Justice Policy Institute, National Association of Criminal
Defense Lawyers, National Center for Youth Law, National
Juvenile Defender Center, National Juvenile Justice Network,
Northeast Juvenile Defender Center, Pacific Juvenile Defender
Center, Public Defender Service for the District of Columbia,
Rutgers School of Law Camden Children's Justice Clinic, Rutgers
Urban Legal Clinic, San Francisco Office of the Public
Defenders, University of Michigan Juvenile Justice Clinic,
Neelum Arya, Tamara Birckhead, Susan L. Brooks, Michele Deitch,
Jeffrey Fagan, Barbara Fedders, Barry Feld, Frank Furstenberg,
Theresa Glennon, Martin Guggenheim, Kristin Henning, Randy
Hertz, Paul Holland, Julie E. McConnell, James R. Merikangas,
Wallace Mlyniec, Catherine J. Ross, Elizabeth Scott, Abbe Smith,
and Barbara Bennett Woodhouse

_____

**B A L E S**, Vice Chief Justice

¶1        Arizona's implied consent statute, A.R.S. § 28-1321,

2

outlines how law enforcement officers can obtain consent to blood and breath tests from persons arrested for driving under the influence ("DUI") and provides consequences for arrestees who refuse to submit to a test. Against this backdrop, we address whether the Fourth Amendment to the United States Constitution requires that a juvenile arrestee's consent be voluntary to allow a warrantless blood draw. We hold that it does and that the juvenile court properly ruled that evidence of a blood draw was inadmissible because the juvenile did not voluntarily consent.

## I.

¶2        On February 17, 2012, Tyler B., a sixteen-year-old high school student, and two friends arrived late to school. A school monitor smelled marijuana on the boys and also saw drug paraphernalia in Tyler's car. School officials detained the boys in separate rooms and contacted the sheriff's office.

¶3        A deputy sheriff soon arrived and read *Miranda* warnings to Tyler. In the presence of several school officials, Tyler admitted that he had driven his car to school after smoking marijuana and that he owned some of the drug paraphernalia in the car. The deputy informed Tyler that he was under arrest for DUI and other offenses. Tyler became agitated and the deputy placed him in handcuffs. The deputy left Tyler with the assistant principal for about ten minutes while

3

retrieving a phlebotomy kit to do a blood draw.

**¶4**        When the deputy returned to the room, he saw that Tyler had calmed down, so he removed the handcuffs from the youth.  He read Tyler an "implied consent admonition" twice, first verbatim and then in "plain English."  The admonition provided in relevant part:

> Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance as chosen by the law enforcement officer to determine alcohol concentration or drug content.  The law enforcement officer may require you to submit to two or more tests.  You are required to successfully complete each of the tests.
>
> If the test results are not available . . . or indicate any drug defined in ARS 13-3401 or its metabolite, without a valid prescription, your Arizona driving privilege will be suspended for not less than 90 consecutive days.
>
> If you refuse to submit or do not successfully complete the specified tests, your Arizona driving privilege will be suspended for 12 months, or for two years if there is a prior implied consent refusal, within the last 84 months, on your record.  You are, therefore, required to submit to the specified tests.

Tyler agreed verbally and in writing to have his blood drawn, and the deputy drew two vials of Tyler's blood.

**¶5**        The State charged Tyler with DUI.  Tyler moved to suppress evidence of the blood draw, arguing that his consent had not been voluntary and that, as a minor, he lacked the legal capacity to consent.  The juvenile court granted the motion, finding that the blood draw violated Arizona's Parents' Bill of

4

Rights ("PBR"), A.R.S. § 1-602, and, notwithstanding the PBR, that Tyler's consent had been involuntary under the totality of the circumstances. The court relied in part on *In re Andre M.*, in which this Court recognized the "increased susceptibility and vulnerability of juveniles" in assessing whether a juvenile's confession was voluntary under the Fifth Amendment to the United States Constitution. 207 Ariz. 482, 485 ¶ 9, 88 P.3d 552, 555 (2004).

¶6 On the State's petition for special action relief, the court of appeals reversed the juvenile court's ruling. *State v. Butler*, 231 Ariz. 42, 45 ¶ 11, 290 P.3d 435, 438 (App. 2012). The court first held that the PBR did not apply because the deputy was acting within the scope of his official duties. *Id.* at 44 ¶ 6, 290 P.3d at 437. It then held that the Fifth Amendment did not apply because the blood was not testimonial evidence. *Id.* at 45 ¶ 10, 290 P.3d at 438. Stating that "the informed consent statute presents no Fourth Amendment issue," the court of appeals held that the juvenile court abused its discretion in suppressing the blood draw evidence. *Id.* ¶ 10 n.6.

¶7 We granted review because this case raises questions of first impression and statewide importance. We have jurisdiction under Article 6, Section 5(3) of Arizona's Constitution and A.R.S. § 12-120.24.

5

¶8     The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment is properly suppressed. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Trial court rulings on motions to suppress are reviewed for abuse of discretion. *See State v. Hausner*, 230 Ariz. 60, 70 ¶ 23, 280 P.3d 604, 614 (2012). "We consider the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling." *Id.*

¶9     Tyler argues that a blood draw is a search subject to the Fourth Amendment and, to be valid, requires either a warrant or an exception such as voluntary consent. The State responds that every Arizona motorist gives "implied consent" under § 28-1321 and that tests administered under the statute are not subject to a Fourth Amendment voluntariness analysis. The State further argues that "adult privileges carry adult responsibilities," and thus juveniles should not be treated differently from adults in assessing the voluntariness of consent to a blood draw.

¶10    Contrary to the State's argument, a compelled blood draw, even when administered pursuant to § 28-1321, is a search

6

subject to the Fourth Amendment's constraints. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013) (holding that a compelled blood draw taken pursuant to Missouri's implied consent law is subject to the Fourth Amendment's restrictions on warrantless searches). "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* at 1558 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).

¶11 *McNeely* also forecloses the State's arguments that requiring warrants for blood draws will unduly burden law enforcement officials or render Arizona's implied consent law meaningless. "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561.

¶12 In general, under the Fourth Amendment, warrantless searches "are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). One such exception is exigent circumstances, but the State has not argued that this exception authorized the blood draw here.

¶13 Consent can also allow a warrantless search, provided the consent is voluntary. *Schneckloth v. Bustamonte*, 412 U.S.

7

218, 226–28 (1973). Voluntariness is assessed from the totality of the circumstances. *Id.* at 227. Relevant circumstances include the suspect's age and intelligence as well as the length of detention. *See id.* at 226–27, 229.

¶14    We reject the State's contention that age should be disregarded in assessing a juvenile's consent to a blood draw. In various contexts, the law recognizes a juvenile's age as a relevant consideration. *See, e.g., J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2399, 2406 (2011) (holding that child's age is relevant, although not necessarily determinative, in assessing whether a child is in custody); *Roper v. Simmons*, 543 U.S. 551, 571–73 (2005) (recognizing the "diminished culpability" of juveniles under 18 and holding that "[t]he differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty"). Juveniles tend to possess less maturity and are "more vulnerable or susceptible to negative influences and outside pressures." *Id*. at 569–70. Courts should not blind themselves to this reality when assessing the voluntariness of consent to a blood draw.

¶15    Consent can be voluntary for purposes of the Fourth Amendment in circumstances that would not establish *vo*luntariness under the Fifth Amendment. *See Bustamonte*, 412 U.S. at 234, 240 (holding that, although *Miranda v. Arizona*, 384

8

U.S. 436 (1966), requires an arrestee to be advised of right to remain silent in order for waiver to be valid, knowledge of right to withhold consent is just one factor in determining voluntariness of a consent to search). But, when the accused is a juvenile, factors such as age and the presence of parents are properly considered when assessing the voluntariness of consent to a search, just as they are relevant in assessing the voluntariness of a confession. *Cf. In re Andre M.*, 207 Ariz. at 485 ¶ 11, 88 P.3d at 555 (noting in the Fifth Amendment context that parents can "help ensure that a juvenile will not be intimidated, coerced or deceived").

**¶16** This Court has previously held that, for an officer to administer a test of breath or bodily fluids on an arrestee without a search warrant under § 28-1321, consent must be express. *Carrillo v. Houser*, 224 Ariz. 463, 463 ¶ 1, 232 P.3d 1245, 1245 (2010). *Carrillo* turned, however, on statutory grounds and did not address any constitutional issues. *Id.* at 467 ¶ 21, 232 P.3d at 1249.

**¶17** The State unconvincingly argues that the "consent" in § 28-1321(A) either constitutes an exception to the warrant requirement or satisfies the Fourth Amendment's requirement that consent be voluntary. We explained previously that "[t]he 'consent' by motorists referenced in subsection (A) does not always authorize warrantless testing of arrestees." *Carrillo*,

9

224 Ariz. at 465 ¶ 10, 232 P.3d at 1247. Rather, the officer is directed to ask the arrestee to submit to the test, and the arrestee may then refuse by declining to expressly agree to take the test. A.R.S. § 28-1321(B); *Carrillo*, 224 Ariz. at 465 ¶ 11, 232 P.3d at 1247. If the arrestee refuses, the statute specifies that a warrant is required to administer the test and the arrestee shall have his license suspended. A.R.S. § 28-1321(D); *Carrillo*, 224 Ariz. at 465 ¶ 11, 232 P.3d at 1247.

¶18 We hold now that, independent of § 28-1321, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw. If the arrestee is a juvenile, the youth's age and a parent's presence are relevant, though not necessarily determinative, factors that courts should consider in assessing whether consent was voluntary under the totality of the circumstances.

¶19 Voluntariness is a question of fact, *Bustamonte*, 412 U.S. at 248-49, and "[w]e review the trial court's voluntariness finding for abuse of discretion," *State v. Cota*, 229 Ariz. 136, 144 ¶ 22, 272 P.3d 1027, 1035 (2012) (reviewing voluntariness of confession). The State has the burden of proving that consent to a search is "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968).

¶20 Although Tyler did not testify at the suppression hearing, sufficient evidence supports the juvenile court's

10

finding that he did not voluntarily consent to the blood draw. At the time, Tyler was nearly seventeen and in eleventh grade. He had been arrested once previously, but not adjudicated delinquent. Tyler was detained for about two hours in a school room in the presence of school officials and a deputy. Neither of his parents was present. Tyler initially was shaking and visibly nervous. When he became loud and upset after being told he was being arrested, the deputy placed him in handcuffs until he calmed down. A second deputy sheriff arrived before the blood draw was taken. After removing the handcuffs, the first deputy read the implied consent admonition to Tyler, once verbatim and once in what the deputy termed "plain English," concluding with the statement, "You are, therefore, required to submit to the specified tests." Tyler then assented to the blood draw.

¶21 Viewing the facts in the light most favorable to sustaining the ruling below, we hold that the juvenile court did not abuse its discretion by ruling that Tyler's consent was involuntary and granting the motion to suppress. We decline to address Tyler's arguments that he lacked the legal capacity to consent and that the Arizona Constitution provides greater protection than the Fourth Amendment in this context.

### III.

¶22 We also decline to address Tyler's argument that the

11

blood draw must be suppressed because it violated the PBR. The statute provides that parents have a "right to consent in writing before any record of the minor child's blood or deoxyribonucleic acid is created, stored or shared." A.R.S. § 1-602(A)(8). The PBR, however, concerns the rights of parents and does not purport to affect a juvenile's right to consent to a search. *See id.* § 1-602(A) (referencing "parental rights"). Nor does the statute provide that evidence will be suppressed if the statute is violated. *See id.* § 1-602. Even if the blood draw was taken in violation of the rights of Tyler's parents (an issue we do not decide), Tyler would not have standing to argue that this violation required suppression of the blood draw evidence. *Cf. Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (holding that person lacks standing to suppress evidence seized in violation of another's Fourth Amendment rights).

### IV.

¶23    For the foregoing reasons, we reverse the decision of the court of appeals and remand the case to the superior court for proceedings consistent with this opinion.


_____
Scott Bales, Vice Chief Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice

12

_____
Robert M. Brutinel, Justice


_____
Ann A. Scott Timmer, Justice

**P E L A N D E R**, Justice, concurring

**¶24**     As a matter of statutory interpretation, we previously held that, absent a search warrant, Arizona's "implied consent" statute, A.R.S. § 28-1321, requires an arrestee's express consent to a chemical test. *Carrillo v. Houser*, 224 Ariz. 463, 463 ¶ 1, 232 P.3d 1245, 1245 (2010). The Court now holds that the Fourth Amendment also applies to a blood draw administered under the statute and thus an arrestee's consent must be voluntary. *Supra* ¶ 18. I have no quarrel with that holding, but reluctantly concur only because the parties acknowledge, and our case law indicates, that voluntariness determinations are reviewed for abuse of discretion. Under that standard of appellate review, I cannot say that the juvenile court erred in finding Tyler's consent involuntary when some evidence arguably supports an inference to that effect. *Cf. State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983) (A court abuses its discretion when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice.").

**¶25** As the majority notes, voluntariness issues often are fact-intensive and are assessed from the totality of the circumstances. *Supra* ¶ 13 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). The majority correctly observes that we generally review rulings on motions to suppress evidence for an abuse of discretion, *supra* ¶¶ 8, 19, and finds no such abuse in the trial court's ruling, *supra* ¶ 21. I write separately to express concern with indiscriminately applying those principles and to suggest, for future purposes only, that abuse-of-discretion review might not be appropriate in cases such as this.

**¶26** Only the deputy sheriff and Tyler's father testified at the suppression hearing in this case. Significantly, the pertinent facts are undisputed and the juvenile court's ruling is not based on witness credibility, weighing of conflicting evidence, or discretionary determinations. Accordingly, the court's ultimate ruling on voluntariness could, and arguably should, be deemed a mixed question of fact and law subject to our de novo review. That approach, although admittedly conflicting with extant Arizona case law, would be consistent with our approach in other criminal-case contexts involving constitutional issues. *See State v. Moore*, 222 Ariz. 1, 7 ¶ 17, 213 P.3d 150, 156 (2009) (noting that, although we review trial court rulings on pretrial identifications for abuse of

14

discretion and defer to factual findings supported by the record, the ultimate question of constitutionality is "a mixed question of law and fact" subject to our de novo review); *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996) (applying same principles to question of whether sufficient legal basis existed for vehicular stop); *State v. Blackmore*, 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996) (same regarding question of whether an arrest was illegal); *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996) (same regarding question of whether there was reasonable suspicion for an investigatory stop of a pedestrian).

¶27     Recently, the Vermont Supreme Court thoroughly expounded on the appropriate standard of appellate review for voluntariness-of-consent issues. *State v. Weisler*, 35 A.3d 970 (Vt. 2011). An appellate court, of course, appropriately defers "to the trial court's underlying findings of historical fact" as a "fundamental principle of appellate review." *Id.* at 976, 985; *see also Chapple*, 135 Ariz. at 297 n.18, 660 P.2d at 1224 n.18. But as the Vermont court observed, *Schneckloth* did not address the subject of appellate review, and "[s]imply labeling consent to search as a question of fact to be determined from the totality of the circumstances" at the trial court level "does little to advance the standard-of-review analysis." *Weisler*, 35 A.3d at 977. Noting that "appellate courts have traditionally

15

reviewed and resolved independently the question of voluntariness in order to 'guide police, unify precedent, and stabilize the law,'" *id.* at 985 (quoting *Thompson v. Keohane*, 516 U.S. 99, 115 (1995)), the *Weisler* court held that "a trial court's decision on the question of the voluntariness of a consent to search, and thus the ultimate constitutional validity of the search, must be reviewed independently . . . on appeal," *id.* at 983.

¶28 Vermont is not alone. Other courts also follow this approach. *See, e.g., United States v. Lewis*, 921 F.2d 1294, 1301 (D.C. Cir. 1990) (conducting de novo review of a trial court's finding of involuntary consent when facts were uncontested and government presented uncontroverted evidence on that issue); *United States v. Garcia*, 890 F.2d 355, 359–60 (11th Cir. 1989) (same); *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633 (Tex. 2000) (assessing whether the trial court's factual findings demonstrate voluntariness under the totality of the circumstances is a question of law); *State v. Hansen*, 63 P.3d 650, 663 (Utah 2002) ("While consent is a factual finding, voluntariness is a legal conclusion, which is reviewed for correctness."); *State v. Phillips*, 577 N.W.2d 794, 800 (Wis. 1998) (rejecting proposition that the standard of appellate review "turn[s] on whether the underlying determination of the [trial] court was fact-specific"); *see also Weisler*, 35 A.3d at

16

976, 980 (collecting cases).

¶29     The analyses of those courts would support de novo review of rulings on whether an arrestee's consent to search was voluntary or involuntary, at least when, as here, the underlying facts are undisputed and the trial court's ruling is not based on conflicting evidence or credibility determinations. This Court has not yet engaged in the type of nuanced explication found in cases such as *Weisler* on the appropriate standard of appellate review for Fourth Amendment voluntariness rulings. This, however, is not the case in which we should do so. The parties have not raised or argued any issues relating to the standard of review, but rather concede that abuse-of-discretion review applies. Accordingly, the Court appropriately applies that standard in deciding this particular case.

¶30     Stating that voluntariness determinations are fact-intensive inquiries, based on the totality of circumstances, and subject to abuse-of-discretion review, however, does not directly answer the ultimate question: What is the test or standard for establishing valid, voluntary consent to a warrantless search under the Fourth Amendment? Generally, to be voluntary, "[c]onsent must 'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *State v. Guillen*, 223 Ariz. 314, 317 ¶ 11, 223 P.3d 658, 661 (2010) (quoting *Schneckloth*, 412 U.S. at 228). "Consent to search is

17

voluntary if it is 'the product of an essentially free and unconstrained choice by its maker,' and not the result of circumstances which overbear the consenting party's will and critically impair his or her capacity for self-determination." *People v. Magallanes-Aragon*, 948 P.2d 528, 530 (Colo. 1997) (quoting *Schneckloth*, 412 U.S. at 225). Stated differently, "before a court may conclude that consent was voluntarily given, it must find no objective evidence of coercion, duress, deception, promises, threats, intrusive conduct or other undue influence by the police, which critically impaired the defendant's judgment." *Id.* at 531; *see also id.* at 533 ("The essential consideration in determining voluntariness of a consent to search is the impact of overbearing, coercive, or deceptive police conduct on a person with the knowledge and particular characteristics of the defendant.").

¶31    Applying those standards, only with some difficulty do I agree with the majority that the juvenile court did not abuse its discretion in finding Tyler's consent was involuntary. *Cf. Chapple*, 135 Ariz. at 297 n.18, 660 P.2d at 1224 n.18 (When trial court determinations hinge not on "conflicting procedural, factual or equitable considerations," but rather are made on undisputed facts, "resolution of the question is one of law or logic," obligating us "to 'look over the shoulder' of the trial judge and, if appropriate, substitute our judgment for his or

18

hers."). But based on the uncontroverted facts in this case, were de novo review applicable here, I would readily conclude that the State met its burden of proving by a preponderance of the evidence that Tyler's consent to the warrantless blood draw was voluntary and, therefore, complied with the Fourth Amendment. *See* Ariz. R. Crim. P. 16.2(b) (prescribing burden and standard of proof on whether evidence was lawfully obtained).

¶32 The majority appropriately recites certain facts to support the conclusion that the juvenile court did not abuse its discretion in finding Tyler's consent involuntary. *Supra* ¶¶ 2–4, 20. The totality of the circumstances, however, includes other undisputed facts indicating that Tyler's verbal and written consent to the blood draw was indeed voluntary and not obtained by any "overbearing, coercive, or deceptive police conduct." *Magallanes-Aragon*, 948 P.2d at 533. Without belaboring all those facts, suffice it to say that had the juvenile court found Tyler's consent voluntary, I would have had no difficulty affirming that ruling, and I doubt my colleagues would have either. But, as noted above, I cannot conclude under an abuse-of-discretion standard of review that the juvenile court erred and, therefore, join in the Court's opinion.

¶33 In addition, *In re Andre M.*, on which the juvenile court relied, is materially distinguishable. Unlike this case,

19

*In re Andre M.* involved issues of voluntariness under the Fifth Amendment's self-incrimination clause and was heavily influenced by "the absence of a parent who attempted to attend the [minor's] interrogation but was prevented from doing so by the police officers." 207 Ariz. 482, 485 ¶ 12, 88 P.3d 552, 555 (2004). Here, Tyler and his father (who had been contacted by the school, came there, and waited in the lobby) never asked to see or speak with each other, and the deputy was not informed until after the blood draw that a parent was present at the school. Once he learned of that, the deputy spoke with the parents, who understood the reasons for Tyler's arrest and had no questions.

**¶34** It is also clear from its ruling that the juvenile court deemed very significant the alleged violation of the Parents' Bill of Rights, A.R.S. § 1-602. The majority, however, correctly rejects that as an appropriate basis for ordering suppression. *Supra* ¶ 22.

**¶35** Finally, I understand that Fourth Amendment issues usually, and necessarily, entail "case-by-case," "fact-intensive, totality of the circumstances analyses." *Missouri v. McNeely*, 133 S. Ct. 1552, 1564 (2013). But a core objective of our criminal-case jurisprudence should be "to 'guide future decisions' as well as to 'guide police, unify precedent, and stabilize the law.'" *Weisler*, 35 A.3d at 979 (quoting *Thompson*,

20

516 U.S. at 114–15). In that regard, I have concerns similar to those recently expressed by Chief Justice Roberts in *McNeely*: "A police officer reading this Court's opinion would have no idea — no idea — what the Fourth Amendment requires of him, once he decides to obtain a blood sample from," in this case, a juvenile DUI arrestee to ensure that the juvenile's consent to a blood draw is voluntary. 133 S. Ct. at 1569 (Roberts, C.J., concurring in part and dissenting in part). The majority here says that "[i]f the arrestee is a juvenile, the youth's age and a parent's presence are relevant, though not necessarily determinative, factors that courts should consider in assessing whether consent was voluntary under the totality of the circumstances." *Supra* ¶ 18. The Court also refers generally to juveniles' relative immaturity, and specifically to Tyler's interactions with the deputy and his fluctuating emotional states during the arrest. *Supra* ¶¶ 14, 20.

**¶36** But faced with the not uncommon scenario presented in this case, a reasonable officer, before drawing blood pursuant to the juvenile's ostensibly valid consent, surely will now wonder whether he or she must first take steps to have a parent notified and present, and inquire about the juvenile's maturity, general comprehension levels, and emotional status, lest the juvenile's consent later be deemed involuntary. Those individualized, unpredictable variables afford little guidance

and certainty to law enforcement officers, school administrators, parents, minor drivers, or juvenile courts. Nor does such unpredictability advance the overarching purpose of the implied consent law — "to remove from the highways of this state drivers[, including juvenile motorists,] who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor" or drugs. *Campbell v. Superior Court*, 106 Ariz. 542, 546, 479 P.2d 685, 689 (1971); *see also Carrillo*, 224 Ariz. at 465 ¶ 13, 232 P.3d at 1247; *cf. State v. Randy J.*, 265 P.3d 734, 742 (N.M. Ct. App. 2011) (holding that state's implied consent law applies to any person, including juveniles, who drives a vehicle in the state).

**¶37** Possibly compounding the problem, our opinion today might well engender dubious involuntariness claims and related suppression hearings aimed at excluding evidence derived from chemical testing of impaired drivers whose express consent was ostensibly voluntary and valid under Arizona's implied consent law. Such challenges can be made by defendants who, because they submitted to testing, retain their driving privileges in the interim. Audio or video recording of a suspect's consent might be a solution. But in view of the various contingencies and uncertainties surrounding determinations by officers in the field (and subsequently by courts) on whether express consent of DUI arrestees (particularly juveniles) is voluntary, the safest

22

course of action for law enforcement might simply be to obtain search warrants, when reasonably feasible, for obtaining blood samples in DUI investigations. *See* A.R.S. §§ 13-3914, -3915, 28-1321(D)(1). That default approach, although arguably diluting the effectiveness of the implied consent law, and not constitutionally required under *McNeely* (which neither involved nor discounted consent as a valid exception to the Fourth Amendment's warrant requirement), would certainly comport with the Fourth Amendment and alleviate many potential, foreseeable problems in this area.

_____
John Pelander, Justice