NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ABRAHAM NTIAMOAH, *Appellant.*

No. 1 CA-CR 17-0683
FILED 4-16-2019

---

Appeal from the Superior Court in Maricopa County
No.  CR2013-458352-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

The Hopkins Law Office PC, Tucson
By Cedric M. Hopkins
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**C A M P B E L L**, Judge:

**¶1**　　　　Abraham Ntiamoah appeals his convictions and sentences of aggravated assault, conspiracy to commit aggravated assault, unlawful discharge of a firearm, and second-degree murder. All acts giving rise to his convictions were committed while he was a minor. Ntiamoah argues that the trial court erred by denying his motion to suppress statements made during a custodial interrogation because his mother was not present during questioning. Because Ntiamoah's statements were made voluntarily, knowingly, and intelligently, we affirm.

## BACKGROUND[1]

**¶2**　　　　A man was shot to death at a Glendale apartment complex. The police investigated and eventually identified Ntiamoah as a suspect.

**¶3**　　　　A few days later, an officer observed Ntiamoah exit the lightrail and get into a vehicle driven by what appeared to be his mother. Following a traffic stop, Ntiamoah was taken into custody and transported to the Phoenix Police Department for questioning. He waited in an interview room for a number of hours before two detectives questioned him for approximately an hour and ten minutes.

**¶4**　　　　Ntiamoah was charged with aggravated assault, conspiracy to commit aggravated assault, unlawful discharge of a firearm, and first-degree murder. He moved to suppress the statements made to police during his custodial interrogation. He argues that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. The court held an evidentiary hearing on the motion to suppress.

---

[1] In addressing the superior court's denial of a motion to suppress, we consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to upholding the court's ruling. *State v. Ellison*, 213 Ariz. 116, 126, ¶ 25 (2006).

**¶5**        A video of the interview was provided to the court before the hearing and was later admitted into evidence. The video shows Ntiamoah wearing pants, a jacket, and a knitted hat. It is unclear how long he waited in the room before the recording began, but the video shows Ntiamoah in the room for approximately four hours before questioning began. Ntiamoah is seen sleeping intermittently at the interview table and on the floor, at one point using his jacket as a pillow.

**¶6**        Just after 3 a.m., detectives entered the room to wake Ntiamoah and begin the interview. Because he was 15 years old, a detective administered juvenile *Miranda* warnings, including an explanation of his right to have a parent or guardian present:

> Detective #1: Do you wanna have your parent or guardian present during questioning?
>
> Ntiamoah: Um yeah, I really do. I wanna have my mama. But she probably not here no more.
>
> Detective #2: Yeah, she's here.
>
> Ntiamoah: She's still here?
>
> Detective #2: Mmm, hmm.
>
> Ntiamoah: I know this is probably tearing her apart.
>
> Detective #1: It's your decision, so.
>
> Ntiamoah: Can I talk to her after we're done?
>
> Detective #2: Yeah.
>
> Ntiamoah: All right.
>
> Detective #1: So . . . let me read it to you again. Do you wanna have your parent or guardian present during questioning?
>
> Ntiamoah: No.

In the video, Ntiamoah is alert and appears to understand the detective's questions. At the suppression hearing, the detective who administered the *Miranda* warnings testified that, based on his observations, Ntiamoah appeared to understand his rights. Ntiamoah confirmed at the hearing that he understood he could ask for his mother to be present.

¶7          The two detectives took turns asking questions about two separate events. The video shows the detectives asking questions in a relaxed manner and Ntiamoah cooperating. In contrast, Ntiamoah testified at the suppression hearing that he was "scared" during the interview. He also claimed the interview room was extremely cold, causing his body to shiver and his teeth to chatter. In the interview video, Ntiamoah asked detectives about the cold temperature and rubbed his hands together. About an hour and ten minutes after the interview began, Ntiamoah informed the detectives that he did not want to speak with them anymore. At that point, the interview ceased.

¶8          The court issued its ruling from the bench, denying Ntiamoah's motion to suppress. The court noted that while the defendant claimed he was cold during the interview, the court did not identify his teeth chattering in the video exhibit and the detective within the camera frame did not make any movements or statements to indicate extreme room temperature. The court further noted that while it may have been better if the detectives had questioned Ntiamoah one at a time due to his age, it did not find the defendant's assertion of fear credible given his demeanor in the video, pointing to Ntiamoah "bantering with the officers" upon conclusion of the interview. The court found that neither detective physically threatened or forced the defendant to answer their questions. In its ruling, the court quoted Ntiamoah telling detectives that, "no," he did not want his mother present.

¶9          The court acknowledged Ntiamoah's age as 15 years old; the fact that he completed his sophomore year in high school; the length of the detention (approximately four hours); the intermittent rest during his confinement; and the length of the interview at one hour and ten minutes. The court considered the testimony and interview video and concluded that under the totality of the circumstances, his statements were voluntary and the waiver of his *Miranda* rights was done voluntarily, knowingly, and intelligently.

¶10         During the jury trial, the prosecution introduced into evidence portions of the interview video. At the conclusion of trial, a jury found Ntiamoah guilty of conspiracy to commit aggravated assault, unlawful discharge of a firearm, and second-degree murder. Ntiamoah was later sentenced to prison.

## DISCUSSION

¶11        We review for an abuse of discretion of both the superior court's finding regarding the voluntariness of statements made to police and the denial of a motion to suppress. *State v. Wilson*, 237 Ariz. 296, 298, ¶ 7 (2015); *State v. Ellison*, 213 Ariz. 116, 126, ¶ 25 (2006).

¶12        While the Fifth Amendment right against self-incrimination applies in all custodial interrogations, a defendant may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Because of the increased susceptibility and vulnerability of juveniles, courts exhibit a heightened concern with the voluntariness of confessions by juveniles." *In re Andre M.*, 207 Ariz. 482, 485, ¶ 9 (2004). Still, a minor can waive *Miranda* rights, even in the absence of a parent or attorney. *State v. Toney*, 113 Ariz. 404, 407 (1976).

¶13        To determine whether a juvenile has made voluntary statements to the police, the superior court considers the totality of the circumstances. *Id.* A juvenile defendant's in-custody statements must not be the product of coercion, ignorance of rights, or adolescent fright. *State v. Jimenez*, 165 Ariz. 444, 449 (1990). The trial court should consider factors such as the defendant's age and education, any advice to the defendant regarding constitutional rights, the duration of questioning and detention, the use of physical force by law enforcement, and the atmosphere of the interrogation room. *Andre M.*, 207 Ariz. at 485, ¶ 11; *Jimenez*, 165 Ariz. at 449. The court should also consider the presence of the juvenile's parents or the juvenile's waiver of *Miranda* rights. *Jimenez*, 165 Ariz. at 450-51.

¶14        Ntiamoah argues that the trial court abused its discretion in denying his motion to suppress because the detectives denied his request that his mother be present during interrogation.[2] Evidence supports the

---

[2] The State asserts that because Ntiamoah's opening brief only argues that his statements were involuntary, he waives any appeal that his *Miranda* rights were violated. Not so. "[I]nherent in [a] defendant's involuntariness argument is the contention that he did not understand the nature of the rights he waived by confessing to the crime," *Jimenez*, 165 Ariz. at 449-50, and that *Miranda* rights were not properly administered, *see State v. Pettit*, 194 Ariz. 192, 196, ¶ 19 (App. 1998) ("[I]n considering whether a person's will was overborne sufficiently to render a confession involuntary,

court's ruling that Ntiamoah voluntarily, knowingly, and intelligently waived his mother's presence. The video shows that the detective read *Miranda* rights to Ntiamoah, pausing after the recitation of each warning to confirm that Ntiamoah understood; Ntiamoah himself testified that he understood his rights. When Ntiamoah initially expressed that he wanted his mother present, detectives assured him that it was his decision. Ntiamoah then changed his mind and asked if he could speak with her upon conclusion of the interview. When the detective repeated the question to confirm whether Ntiamoah wanted his mother present, he answered "no." Ntiamoah argues that the moment he asked for his mother, questioning should have ceased and the video shows that is exactly what happened.

¶15        The court also made extensive findings about the other factors surrounding the voluntariness of Ntiamoah's statements, weighing Ntiamoah's age, education, understanding of *Miranda* warnings, the length of detention and questioning, the temperature of the room, and the absence of threats or use of force by the detectives. We defer to the court's determination that Ntiamoah was not credible when he claimed he was afraid during the interview. *See State v. Huerstel*, 206 Ariz. 93, 106, ¶¶ 56-59 (2003). Accordingly, the superior court did not err in denying Ntiamoah's motion to suppress.

## CONCLUSION

¶16        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

the court should consider whether the accused was advised of his or her constitutional rights.").